GRICE<br>v.<br>PEARSON.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## SUCCESSION OF AUGUSTE TETE.

Where the husband buys property at the succession sale of his wife's father, for which he gives his own notes, and they are afterwards received by him in settlement of his wife's share of the succession, she has a legal mortgage against his property for the amount of the notes, provided it is shown, that he was solvent at the time he received them.

The article of the Civil Code, 2235, in declaring, under what circumstances the authentic act shall not be full proof between the parties, uses the word "*forgery*" in the sense of "*falsity.*"

The offence of making a false act by a notary, is punishable by the act of 7th of June, 1806.

Where a notary has been convicted of a misdemeanor in office, by executing a *false* act, the instrument no longer makes full proof; but, until the act is attacked on this ground, it remains authentic and valid in point of form.  There are exceptions to this general rule, viz., cases in which one individual personates another, or where an insane person makes a will.

APPEAL from the District Court of Assumption, *Randall*, J.  *J. C. Beatty*, and *Benjamin* and *Micou*, for the widow *Tete*.  C. A. *Johnson* and *Miles Taylor*, for *Blanchard*, *Eimer & Co.*, creditors.  The judgment of the court *(Preston*, J., not sitting in the cause from interest,) was pronounced by

EUSTIS, C. J.  This appeal is taken by certain judgment creditors of the succession of the late *Auguste Tete*, from a judgment of the Court of the Fifth District, by which a preference over their claims is accorded to the surviving

wife, resulting from a receipt by her husband of his own notes, as the paraphernal property of the wife. A similar case, in the same succession, came before us in 1849, and it is reported in 4th Ann. 465, under the title of *Slatter v. Tete.*

The evidence in that case, established the delivery of the notes to the husband. They were received by the wife, on a partition of the estate of her deceased mother, as her share in the succession, and were handed by her to her husband. These notes bore neither privilege nor mortgage; no proof was administered of their value, or of the solvency or pecuniary condition of the affairs of the husband, at the time. Under the provisions of the articles 2367 and 3280 of the Code, and uniform jurisprudence of the State, we are compelled to decide against the claim of the wife, in favor of the judgment creditor of the succession.

In the present case, that difficulty has been removed, and it is established by competent evidence, that the husband was amply solvent at the time he received the notes. The notes were, therefore, the representative of real value ; and conceding, that their delivery is sufficiently proved, as their origin is unquestionable, we will assume that they created a legal mortgage, in favor of the wife, on the property of the husband. Subsequently, the appellee executed acts of renunciation of her mortgage, in favor of the appellants; and, on the trial of the cause, the appellants having offered these acts in evidence, the appellee offered testimony to contradict them, and to show that they had not been signed by her, in the presence of the notary. The district judge received this evidence, to the admission of which, a bill of exceptions was taken. The grave question presented, by this bill of exceptions, has been argued with great care at bar, and we will procede to determine it, without noticing the very irregular manner in which it was raised in the court below; and, under the hope, that matters of this importance will be brought before us in a distinct and separate suit, and not cumulated with proceedings which only embarrass their decision. The effect given by law to authentic acts, rests upon the presumption, that a public officer, exercising a high and important trust, under the solemnity of an oath, has done his duty when acting within the scope of his authority. Selected for their character, capacity and probity, as notaries are presumed to be, the law attaches full credit to their official acts. This prerogative is established in the interest of public order, to maintain peace among men, and to prevent contestations concerning the proof or evidence of their conventions. The act passed before a notary, under the formalities prescribed for its execution, constitutes a record and a certified copy, under the hand and seal of the officer, is received as full proof of the original. Courts of justice, by means of these officers, are relieved from a large mass of business, which would otherwise impede and embarrass their ordinary proceedings. Meetings of creditors are held before notaries ; a large portion of the business of suits in partitions, is accomplished before them. They make wills ; they hold and conduct meetings of families, in which the interest of minors are concerned; they receive acknowledgments of the condition of persons, acts of emancipation, donation, and every species of conventional obligation. Indeed, the importance of their duties, and of the faith to be attached to their acts, cannot be overstated ; they reach every relation of society through the life of man, and his death is a new call for their services. All proceedings in the settlement of successions, not had in court, are conducted before the notary.

The authentic act, as relates to contracts, must be executed before a notary public, in the presence of two witnesses, free male and at least fourteen years of age, or of three witnesses, if the party be blind. If the party does not know

how to sign, the notary must cause him to affix his mark. Code 2231. The authentic act is full proof of the agreement contained in it against the contracting parties, their heirs and assigns, unless it be declared and proved a forgery. Art. 2233.

An act, whether authentic or under private signature, is proof between the parties, even of what is there expressed only in enunciative terms; provided, the enunciation have a direct reference to the disposition. Art. 2235.

The first part of the article 2233, is taken literally from the article 1319 of the Code Napoleon, which provides: " L'acte authentique fait pleine foi de la con-vention qu'il renferme entre les parties contractantes et leurs heritiers ou ayant cause. Neanmoins en cas de plainte en faux principal, l'execution de l'acte argué de faux sera suspendue par la mise en accusation; et en cas d'inscription de faux faite incidemment les tribunaux pourront, suivant les circonstances, sus-pendre provisoirement l'exécution de l'acte."

The article of our code is silent, and contains no provision whatever as to the mode of proceeding, by which the forgery or falsity of the act is to be estab-lished. The article of the Code Napoleon contains ample provision on this subject. The words of the article in that code, are technical and peculiar to the French criminal jurisprudence; and the word forgery in our code, is not used in the particular sense of our criminal law, but in the sense of the word *faux*, or falsity. The article in the French Code means, that the authen-tic act is full proof of the agreement contained in it, &c.; but, in the event of a public charge of falsity being made, affecting the act, its exe-cution shall be suspended during the prosecution; and, in the event of a charge of falsity being made incidentally, courts may, according to circumstances, suspend, provisionally, the execution of the act. In order to understand the whole scope and operation of this article, a reference must be had to the mode of proceeding under it. In the first case stated in the article, where there is a public accusation of falsity, the accused is delivered to the criminal tribunal, under the forms of an ordinary prosecution for a crime; this is called, the charge *en faux principal*. In the other case, that of the charge of falsity made inci-dentally, *faux incident*, is, when in the cause of a suit, the charge of falsity is formally made, and the nullity of the act demanded by reason of its falsity. In this case, the proceedings are conducted according to the rules laid down in the code of civil procedure. The civil suit is suspended until the proceedings on the charge of falsity are determined, whenever the charge is made by one of the parties, touching an act which is to be relied upon as evidence in the suit. The mode of making the charge, and the proceedings under it, are regulated by spe-cial articles of that code. The result is, that the proceedings may be considered as initiatory of a criminal prosecution, if there should be proofs of falsity or falsifi-cation; and that no judgment can be pronounced, either initiatory or final, in relation to the falsity, except on the action of the officer representing the State, to whom all charges of falsity must be communicated, by reason of the interest of society in the preservation and truth of public records.

The authentic act makes full proof of the conventions and facts, which it is competent for the notary to certify, so that they cannot be repelled by a simple denial, nor can their falsity be proved by ordinary means. Their falsity can, undoubtedly, be proved, because a public officer may fail in the discharge of his duty, and the law would not leave the citizen without a remedy; but such proof can only be made in the difficult proceedings of inscription *de faux*, under the Code of Procedure, art. 214 to 251.

The authentic act, not only is full proof of the agreement, but of what passed before the notary in the completion of the act; not only of *quod conventum,* but *quod actum est.* Droit Civil par Marcadé, vol. 5, p. 24. Commentary on art. 1319. Code of Civil Procedure, articles 214 to 251.

We have no such provisions in our law; our codes and statutes are silent on the subject. The mode in which the act, the authenticity of which is attacked, shall be declared and proved a forgery, was undoubtedly intended by the framers of the code, to be provided for afterwards; but, the omission has never been supplied by any subsequent legislation. The very embarrassing question presents itself, whether authentic acts are on the footing of ordinary writings, as to their effect as evidence, or are protected by the sanctions with which the security of property and of personal rights, as well as the law, requires they should be invested.

It must not be supposed, that the offence of making a false act by a notary public, is without punishment by our laws. It comes within the denomination of misdemeanors in office, and is reached by a statute of the 7th of June, 1806.

If any judge, justice of the peace, sheriff, or other civil officer, shall be guilty of any misdemeanor in the execution of either of their respective offices, he shall, on conviction thereof, suffer fine or imprisonment, or both; shall be rendered for ever incapable of holding any office of profit or trust, and shall, moreover, be liable to action by the party injured.

If a notary officially certifies to be true, what he knows to be false, he is guilty of a misdemeanor, and can be punished under this statute. The sentence of the offender carries with it, necessarily, the decision of the court on the falsity of the act on which the prosecution rests; and it may be considered as a declaration, and that its falsity has been proved. In such a case, the requisites of the article 2233, has been complied with virtually; and the act no longer makes full proof, or has the attribute of authenticity, which it previously had.

By pursuing this course, in the establishment of the falsity of the act, the reason, purpose and spirit of the article 2233, are carried out, and its letter is observed as closely as the present state of our legislation will permit. The law looks to the preservation of the authenticity of acts passed before a notary, as a matter of public order, in which the great interests of society are involved, and will not permit the official doings of the public officer to be drawn in question, except where the law itself has been violated; and, as in other criminal cases, requires the intervention of its minister, before the truth of its records can be called in question. This requisition is no obstacle to the parties having full recourse in annulling or impairing the effect of an act, by way of rescission, for any of those causes which affect the validity of the agreement contained in it. The act may be authentic and valid in point of form, and the agreement it contains may be a nullity or inoperative, in whole or in part. It may be defective in point of form, and invalid as an authentic act; but the contract, under private signature, which it contains, may be perfect in form and effect. The validity of the agreement is independent of the authenticity of the act, which is a matter of form; and which, when clothed with certain forms, the law requires should be maintained. The records of a notary are closely assimilated to judicial records. The whole system of executory process is based on this resemblance. It is resorted to when the creditor's right arises from an act importing a confession of judgment, and contains a privilege or mortgage, which is an act passed before a notary and witnesses, in which the debt is acknowledged; for which, the mortgage or privilege is given. C. P. 732 *et seq.* This act, the law

declares, shall make proof between the parties, unless it be declared and proved          <span style="float:right">Succession<br>of<br>Tete.</span>
to be a forgery.  8 Toullier, 64 *et seq.*

Pothier says, the authentic act makes full proof, by itself, of what it contains.
Nevertheless, authentic acts may be attacked as false, but until the accusation of
falsity is determined, and the acts  have been adjudged  to be false, they must
be provisionaly executed, which is decided by the  law  2,  Code *ad leg. corn. de
falsis*.  A wise decision, since  crime  is not to be presumed;  and it would be
dangerous to allow debtors to procrastinate the payment of their lawful debts, by
accusations of falsity.   Pothier on Ob., 734.   It remains to consider the various
decisions referred to by counsel, in opposition to the view we have taken of the
intent meaning and effect of this article, 2233.

It may be proper to restate the question under consideration, as presented by
the bill of exceptions.   The testimony received under the objections  of the ap-
pellants was  to  show,  that the acts of the renunciation were not signed by the
appellee,  in the presence  of the notary,  in the  presence  of witnesses.   The
witnesses offered, whose testimony was  admitted,  were  the  notary  public,
before whom the acts purported to have been passed, and one  of the  subscrib-
ing witnesses, the other witness having died.   They proved the fact,  that the
act was not signed in their presence, but it is not pretended  that the  act  was
not signed by her own free  will, and without  the influence of force, fraud, or
stratagem.   The renunciations of  the  rights  of the appellee of her tacit mort-
gage  in favor of  the  appellants,  were  made  in  consequence  of the obliga-
tion the husband took upon himself in granting  the  mortgage  to  secure  their
debts, to affect the  release  of the tacit mortgage of the wife.   This formal obli-
obligation in the acts of mortgage, the wife complied with, by executing the acts
of  renunciation in favor of the  several mortgage creditors,  in  which there is a
recital of her appearance and  signature,  at the office of  the notary,  in his pre-
sence and that of the witnesses, and with the authorization of her husband ; the
acts bearing the signature of all.   Under this state of facts is the appellee permit-
ted to contradict these declarations, and  prove,  not that  the  act was not signed
by her, but that it was not signed by her as stated in the act, in  the presence of
the notary and witnesses ?   What is our jurisprudence in  relation to this ques-
tion, whether or not the form of the act can be invalidated by  disproving  a  fact
necessary to its validity as an authentic act which has been acknowledged formally
by the party, and  certified to  officially by  the notary, and attested by the  sub-
scribing witnesses ?    A large number of  the decisions  referred to by counsel,
relate to the admissibility of the notary to contradict his  own certificate.   These
cases do not affect the question we are  endeavoring  to  solve,  and  need not  be
particularly noticed.

The first case in  point  of  time which  is  considered as  pertinent,  is re-
ported in 5 M. R. 405.    It is that of *Langlish* v. *Schons*, and was tried
before  the  Supreme  Court,  in  1818.    The  first  was instituted in order to
have a notarial act, which purported  to be an act of donation of liberty from the
plaintiff  to  his slave,  declared null and  void,  as  forged  and  fraudulent, and to
obtain damages against the defendant  for  his agency  in  the fraud.   The  evi-
dence adduced to prove the  forgery, was the testimony of one of the subscrib-
ing witnesses; but it was held insufficient to establish the allegation of  forgery.
The judgment of the lower court was reversed, and judgment rendered for the
defendants.  The next case is that of *Marie* v. *Abert's heirs*, 6 M. R. 731, and 8
M. R. 512.   The heirs attacked the will  of  their testator,  which was  in  the
form of an authentic act,  on  the ground of the insanity  of  the testator.   The

opinion in that case states, "The next point seems to have been before us in the case of *Langlish* v. *Schons*. We there held, that a public-act might be impeached by the witnesses who subscribed it. The declaration of such witnesses in this, as in every other case, may be opposed by other testimony.

In the case of the *Firemen's Insurance Company* v. *Cross*, a wife who had mortgaged her property to secure the payment of a loan received by her husband, which did not inure to her benefit, was permitted to prove by parol, to show that fact, although she appeared alone in the act as having borrowed the money with the authority of her husband.    4 R. R. 509.

In the case of *Payne* v. *Phegue*, in which a married woman sought to annul an act of mortgage given to creditors of the husband, fraud and deception were alleged to have been practised on her in obtaining her signature to the act, which was not executed in the presence of the witnesses, as it purported to have been.    The notary and witnesses were permitted to testify to this fact; but no objection was made to the admission of their testimony.    The question presented in the present suit did not arise.    It was determined, in that case, that the renunciation which was opposed by the defendants to the rights asserted by the plaintiff was not legally established.    The act which was said to contain it, was not authentic, because her renunciation was not received in the presence of two witnesses, as was proved by the testimony of the notary, and witnesses received without any exception being taken.    The two first cases, that of *Schon's* and of *Abert's heirs*, were determined before the repeal of the Spanish laws, and it does not appear to us, that either of them purport to settle any general rule in relation to the effect of authentic acts.    The cases cited by the counsel for the appellants, relate rather to the competency of the notary than the admissibility of the evidence.    We do not see how the evidence received under the bill of exceptions can be admitted, without destroying the distinction between public and private acts, and the security afforded by the law to public records.    Parties have their full remedies against their conventions, evidenced by authentic acts, in cases of fraud, violence, or deception, but we think that as to the requisites of the act, the certificate of the public officer must be held conclusive, unless the act is established to be false.    Unless the public officer is adjudged to be delinquent, his official acts must stand, and this delinquency must be prosecuted as an offence, in the punishment of which, the State has a deep interest.    There may be, doubtless, exceptions to this general rule.    The case of a will made by a person insane, as in *Abert's* case, was that of one person representing another, and thus imposing on the notary and witnesses, would not be within its reason or operation.    But we find nothing in the case before us which takes it out of a principle which, in the view of the consequences of a contrary doctrine, we are compelled to adopt.    Under the allegations with which the case comes before us, we do not feel ourselves at liberty to remand it, inasmuch as this is the second time the marital rights of the appellee have been before us.

It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the proceedings before the notary be set aside, that the preference claimed by the appellee to be paid out of the proceeds of the property of the succession adversely to the appellants be disallowed, and the preference to be paid as aforesaid, over her, be adjudged to the appellants; that the administratrix proceed to the sale of the property of the succession without delay, and the payment of the debts thereof; and the appellee pay the costs of this appeal.

SLIDELL, J., disssenting. Under some of the decisions of our predecessors, cited by the counsel of *Mrs. Tete*, I have come to the conclusion, that the individuals who witnessed the acts of renunciation, were admissible to prove, that *Mrs. Tete* did not sign before the notary and witnesses, but out of their presence, and that independent of the notary's testimony, which in my view of the matter it is not necessary to determine, their testimony, which the district judge believed, is sufficient proof of the facts. But I must say, that I regret not being able to concur in the views of my brethren, as the ruling is more likely to conduce to the public good.

---

## SAME CASE—ON A RE-HEARING.

THE judgment of the court, on a re-hearing, was pronounced by EUSTIS, C. J. It is ordered, that the former judgment of this court be set aside; that a new trial be awarded, and the case remanded for further proceedings according to law; the appellee paying the costs of this appeal.