# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-1199

**GLORIA MOORE**

**VERSUS**

**DONALD STEVE BURNS AND THE SUCCESSION OF FAYE Z. BURNS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 69,164
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ARTHUR J. PLANCHARD**
**JUDGE PRO TEMPORE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and John D. Saunders, Judges and Arthur J. Planchard*, Judges.

**AFFIRMED.**

**Elvin Clemence Fontenot  Jr.**
**110 East Texas Street**
**Leesville, LA 71446**
**Counsel for Defendant-Appellee**
     **Succession of Faye Z. Burns**

**Tony Clell Tillman**
**P. O. Drawer 648**
**Leesville, LA 71496-0648**
**Counsel for Defendant-Appellee**
     **Donald S. Burns**

**William Alan Pesnell**
**P. O. Box 330**
**Alexandria, LA 71309-0330**
**Counsel for Plaintiff-Appellant**
     **Gloria Moore**

    *Judge Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

PLANCHARD, Judge[1].

The Plaintiff, Gloria Moore, appeals the judgment of the trial court dismissing her petition to annul a donation of certain property from her mother to her brother, Donald Burns.

On November 24, 1997, Faye Burns executed a donation giving certain property located in Vernon Parish to her son, Donald Burns. On July 2, 2002, Gloria Moore, the daughter of Faye Burns and the sister of Donald Burns filed a "Petition to Annul Donation and for an Accounting." Named as Defendants were Donald Burns and the Succession of Faye Z. Burns. The petition alleges that the notary who signed the Act of Donation was not present when it was executed by the Donor and signed by the witnesses, and that, as a result, the donation should be annulled as not conforming to the requirements of authentic form. The trial of this matter was held on May 23, 2003.

The testimony at trial centered around the question of who was present at the execution of the donation. Donald Burns testified that those present at the signing of the donation were those whose signatures appear on the document: Jeanette LaCour and Pearlie Lewis, both employees of the home health care provider employed by Faye Burns; Faye Burns, the donor; himself, the donee; and Suzanne Magee, the notary. He testified that his daughter Dina Burns was also present. He stated that the document had been drawn up by a local attorney, Ed Cabra and that he picked it up at Cabra's office and brought it to his mother's house for signing. He stated that he could not remember the time of day the document was executed but opined that it was

---

[1] Judge Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

probably mid-morning. He stated that Suzanne Magee arrived at Faye Burns' house after him.

Suzanne Magee, the notary who signed the donation, also testified at trial. She informed the court that at the time the donation was signed she was employed by the District Attorney's office in Leesville. She testified that she had obtained her notary's commission before becoming employed by that office. Magee stated that she was related to Don Burns and his wife, Jeri, by marriage and had met Faye Burns while Don and Jeri lived with her. She testified that she did not know Jeanette LaCour or Pearlie Lewis personally but was acquainted with them. Magee stated that Jeri Burns called her and asked her to go Faye Burns' house to sign a donation of real estate from Faye to Don. She could not remember what time of day it was. Magee testified that she explained the donation to Faye Burns but that she already knew what it was about. It was Magee's testimony that she knew the donation had to be signed by all the parties at the same time and that is why she went to Faye Burns' house. She stated that she saw Faye Burns, Donald Burns and each of the witnesses sign the act of donation. She affirmed that, at the time she left Faye Burns' house, all four signatures were on the donation. Magee admitted to no doubt that all the parties whose signatures appear on the donation were present and that she saw each of them sign. Dina Burns, Donald Burns' daughter, also testified. She stated that she too saw the donation signed by all the people whose signatures appear thereon.

Pearlie Lewis testified that on November 24, 1997, she worked for Thompson Home Health and that, in that capacity, she took care of Faye Burns twice a day. She stated that she remembers signing the donation and that she remembers Jeanette LaCour and Faye Burns being there, but that she did not remember the notary or Dina

Burns being there. She stated that Donald Burns was not there at the time the donation was signed. She did not know who brought the document to Faye Burns house.

The testimony of Jeanette LaCour was also introduced at trial. She too stated that on November 24, 1997, she was employed by Thompson Home Health and, in that capacity, went to the home of Faye Burns twice a day, five days a week. She stated that she was present when the donation was executed as were Lewis, Donald Burns, Faye Burns and another woman she could not identify. LaCour admitted to a change in testimony since signing an affidavit to the effect that not all the persons whose names appeared on the donation were present at the signing. However, she explained that she was presented with the affidavit at time of great stress, due to her husband's hospitalization and uncertain health. As a result, she indicated that she was not fully cognizant of what she was signing and was mistaken in what she stated therein.

Gloria Moore testified that before she died in October 2001, her mother, Faye Burns, told her that Magee was not present when the donation was signed. She further testified that her mother had changed her mind about giving the property to Donald. However, she admitted that she did not know whether her mother signed any document to that effect.

After hearing the testimony and receiving the documentary evidence, the court gave oral reasons for judgment and dismissed the Plaintiff's "Petition to Annul Donation." The Plaintiff, Moore, appeals.

INTENT

The Plaintiff first asserts that the trial court erred in considering the intent of the donor in reaching its decision. However, after reading the trial court's oral reasons

for judgment, it appears that the trial court raised the question of intent only to make it clear that intent is not an issue in this case. The oral reasons for judgment, taken as a whole, show that the case was decided on the question of whether the donation was executed in a manner conforming to the procedural requirements of an authentic act. Therefore, we find no error in this regard.

CREDIBILITY EVALUATIONS

The remaining assignments of error, although differently characterized by the Plaintiff, all essentially turn on credibility evaluations made by the trial court. The appellate court "will not reverse the fact-trier's credibility evaluations or findings of fact, unless manifestly erroneous. *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978); *Reeves v. Reeves,* 607 So.2d 626 (La.App.2d Cir.1992), writ denied." *Succession of Caraway*, 25,879, p. 4 (La.App. 2 Cir. 6/22/94), 639 So.2d 415, 419.

The Plaintiff essentially argues that the trial court erred in relying on the testimony of Suzanne Magee and should have instead relied on the testimony of Pearlie Lewis.

Plaintiffs argue that the testimony of Magee and that of Dina Burns is unreliable and inconsistent. She first notes that, while the time sheets of the District Attorney's office show that Magee was present at the office all day on November 24, 1997, Magee testified that she left work during the day to go to Faye Burns' house for the execution of the donation. At trial, the Plaintiff introduced into evidence time sheets from the District Attorney's office showing that Magee did not take any time off on November 24, 1997. However, Magee testified that short absences from the office were not always noted on the time sheet. The Plaintiff makes similar assertions about Dina Burns, stating that her work time sheet shows she spent a full day at the office. However, at trial not only did Dina Burns state that she was not on a time

5

clock and that her employer allowed her to leave if she needed to, Plaintiff's counsel

agreed that he, too, was aware that Dina Burns' employer did not have a strict policy

in this regard.

On appeal, the Plaintiff additionally asserts that the trial court erred in taking

improper judicial notice of "how employers and governmental bodies" in Vernon

Parish "handle employee personal time." The trial court did, in fact, note in its oral

reasons for judgment that:

> The Joint Stipulation was for time sheets from different sources where
> the parties present, or, alleged to be present had signed time sheets
> showing that they were - - or turned in time sheets their employers had
> them showing they were working at a time when most of the witnesses
> felt this occurred during the morning, that's when the time sheets cover
> those periods of time. The whole day, but, for sure the time sheets don't
> reflect that anybody was off from employment. I don't know how much
> weight you can give to that sort of thing based on the testimony and just
> common knowledge, or the common - - what we know about our
> ordinary business affairs. Most employers, especially in Vernon Parish
> are liberal, no question about it, on personal time for personal things. I
> know that, certainly, is the case around the courthouse and government
> bodies.

However, we find that we need not reach the question of whether the trial court

took inappropriate judicial notice of local custom in this regard. The evidence

adduced at trial is sufficient to support the trial court's finding that the time sheets do

not necessarily evidence the presence of Suzanne Magee and Dina Burns at their

places of employment at the time the donation was signed. The witnesses, when

confronted with the time sheets, explained that small absences from work during the

day were not routinely reported on the time sheets. No witness testified to controvert

this version of the time keeping practices of these employers. The trial court chose

to believe the version of events related by Magee and Dina Burns. Finding that the

testimony of record supplies a sufficient basis for this credibility evaluation, and

finding no manifest error, we will not overturn the trial court's determination in this regard.

The Plaintiff further asserts that Magee's testimony is inconsistent because while she asserts that Jeri Burns called her to go Faye Burns' house, Jeri Burns was not present when the document was signed. We find no inconsistency here. There was no testimony by anyone that Jeri Burns was present. Nor need she have been at Faye Burns house in order to make a telephone call asking Magee to go there. Jeri Burns does not deny making the call. Rather she states that she is unable to remember the events of that day, more than five years prior to her court testimony.

Finally, the Plaintiff asserts that the trial court should have believed the testimony of Pearlie Lewis. However, we find that the record supports the credibility evaluations made by the trial court. While there were minor inconsistencies between the various testimonies of the parties, this may be explained by the passage of more than five years. It was the testimony of all those present, except for Lewis, that the donation was signed by both donor and donee in the presence of the notary and two witnesses. The evidence of record, taken as a whole, supports the conclusion that the trial judge made reasonable credibility evaluations.

We further note that:

> An authentic act in Louisiana, as under the French Code, is presumed to be valid, and this presumption is established in the interest of public order, to maintain peace among men and to prevent contestations concerning the proof or evidence of their conventions. *Succession of Tete,* 7 La.Ann. 95, 96 (La.1852).

> Where, as here, the memories of the signatories are blurred by the passage of time, one seeking to invalidate an apparently authentic act must present strong and convincing proof of such magnitude as to overcome the presumption of verity of notarial acts. *DiVincenti v. McIntyre,* 611 So.2d 140, 142 (La.App. 1st Cir.1992), *writ denied* 614 So.2d 1264 (La.1993).

7

*Meltzer v. Meltzer*, 95-551 (La.App. 4 Cir. 9/28/95), 662 So.2d 58, 62, writ denied 95-2616 (La 1/5/96), 666 So.2d 293.

We cannot say that the Plaintiff herein has carried the heavy burden of proof necessary to invalidate an authentic act. Accordingly, we will not overturn the trial court's opinion herein.

CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff/Appellant, Gloria Moore.

AFFIRMED.