666 So.2d 1181 (1995)
Carolyn Rapier RITZ
v.
Craig Joseph RITZ.
No. 95-CA-683.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1995.
Writ Denied March 8, 1996.
Dennis M. Laborde, Baldwin & Haspel, New Orleans, for Defendant/Appellant, Craig Joseph Ritz.
Robert G. Creely, Amato & Creely, Gretna, for Plaintiff/Appellee, Carolyn Rapier Ritz.
Before BOWES, DUFRESNE and GOTHARD, JJ.
BOWES, Judge.
Defendant/appellant, Craig Ritz, appeals a judgment of the district court in favor of Carolyn Rapier Ritz, finding that the pre-nuptial contract between the parties was null and void ab initio. We affirm.

FACTS AND TESTIMONY
Craig Ritz and Carolyn Rapier were married on April 28, 1985, of which marriage no children were born. Mrs. Ritz filed for divorce in 1993 and the parties were divorced in 1994. Mr. Ritz filed a petition to partition the jointly owned property, alleging that while the couple lived together under a regime of separate property by virtue of a pre-marital contract, nevertheless, there was some property that was jointly owned.
Thereafter, Mrs. Ritz filed a motion to determine the validity of the marriage contract and requested the court to sever the issue of the contract from the partition of property matter still pending. The court granted this motion and a trial on the merits relative to the validity of the contract only commenced on October 31, 1994 and concluded on February 21, 1995. In April 1995, the court rendered judgment, concluding that the contract was null and void because one of the signatory witnesses to the contract testified that he signed as a witness after the marriage ceremony and outside the presence of the two principals; therefore, the court concluded that the contract did not fulfill the requirements of an authentic act as set out in La.C.C. art. 1833, infra.
Defendant appeals, averring that the court erred in failing to find the contract valid as *1182 either an authentic act, or an act under private signature.

EVIDENCE AND TESTIMONY
At the hearing, Craig Ritz testified that he and Carolyn Rapier Ritz entered into a prenuptial agreement on April 18, 1985, prior to their marriage, in the office of his attorney, Ernest Burguieres. The agreement was introduced into evidence, showing that on April 18, 1985, Carolyn Rapier and Craig Ritz agreed to be separate in property. It was witnessed by Charles Healy and Geraldine Delatte, and Burguieres signed as the notary public. At that time, both parties received copies of the agreement, but Mr. Ritz admitted that he did not record the agreement until April of 1993, shortly before divorce proceedings commenced. He stated that he recorded it at that time in order to protect any third parties from whom Mrs. Ritz might try to borrow money. Mrs. Ritz, who was also her husband's accountant, had had power of attorney in regard to Mr. Ritz's checking account prior to the marriage but, after the wedding, she had her name added to the account as a principal or co-owner. Mr. Ritz had numerous other investment accounts which were not maintained separately, but were also joint accounts with Mrs. Ritz; and he admitted to writing his will in which he left all of his property "both my community and separate property" to Carolyn: "I understood that if I ever did have community property I would leave that to her ...".
A copy of the will, along with several acts of sale of various properties to Mr. and Mrs. Ritz, were admitted into evidence. None of the acts of sale contained any language which made any reference to a separate property regime between the Ritzs, although one sale from Mr. Ritz (as seller) contained a declaration that Carolyn acknowledged the separate nature of that property. Mr. Ritz explained that the property sold was acquired by him before his marriage. Financial statements filled out and signed by Mr. and Mrs. Ritz showed numerous assets listed as "community" assets. Numerous stock certificates were issued to Craig J. Ritz and Carolyn Ritz, none of which existed prior to the marriage. At no time did Mr. Ritz tear up or rescind the pre-nuptial agreement and Mrs. Ritz handled all the business and paid all the bills.
Carolyn Ritz testified that on the night before the wedding, Craig gave her a marriage contract at their home and told her that he would not marry her unless she signed this contract, so she did sign six copies of the document. She testified that at that time, their were no other signatures on the contract and no one else was present. She did not know when anyone else signed the documents, except from the information learned from hearing the various depositions taken of the other alleged witnesses to the contract.
Mrs. Ritz further stated that after the wedding, Craig questioned her as to why she was keeping things separate, and she alluded to the marital contract. He then agreed to destroy all copies of the contract and had Mr. Burguieres come to the house one evening to tear them up. However, Craig did not let her examine the documents before he tore them up. After that episode, the couple handled everything as community property. In 1988, when the marriage was shaky, she asked an attorney to check the public records for her and discovered then that no pre-marital contract had been recorded.
Mary Healy, an acquaintance of the couple, attended the wedding in April 1985. She testified that she and her husband, Charles, arrived late for the ceremony, and then later attended the reception. As they entered the hotel, Mr. Burguieres came up to Charles and asked him to witness a signature on a marriage contract. (This statement was admitted in evidence on a proffer). She said she advised her husband not to get involved since the couple was already married. He (Charles) did not sign the paper at that timebut later, at the reception, she saw him sign a document at a table with Mr. Burguieres. She admitted, however, she had not read the document that she saw her husband sign.
Charles Healy testified that he did not recall going to the attorney's office to sign any pre-nuptial agreement. At the reception, he saw Mr. Burguieres who "might have asked me if I could witness a document." He identified the pre-nuptial contract as the *1183 one he believed he signed at the wedding reception, although he did not read the document at the time he signed it. He recalled a conversation prior to the wedding in which Carolyn and Craig discussed the contract but, on redirect examination, he stated that the recollection "came to me in a vision."
He further admitted that he and Mr. Ritz owned a piece of property together which Mr. Ritz "suddenly" did not want to sell, and that Mr. Ritz "was inferring that ... my testimony was needed, that he couldn't make any decisions on a business scale on this property until after this wedding situation ended." Upon questioning from the court, Mr. Healy stated that it was his impression that the document he signed at the wedding reception was the marriage contract.
Sylvia Landry, the attorney who prepared Mr. Ritz's will, testified that Mr. Ritz specifically told her that he had community property with Mrs. Ritz, and that they had co-mingled his separate property. She asked him about an alleged pre-nuptial agreement and he told her that they had "torn that up" and that "it wasn't good anyway, because we hadn't done it right." Ms. Landry also executed an act of sale to Mr. Ritz and Mr. Healy in which there were no declarations of separate property because the men informed her that they only had community property with their spouses.
Ernest Burguieres, attorney and friend of Mr. Ritz, testified that he had no "independent recollection" of executing the Ritz document, but had no reason to believe the document did not speak for itself. He had no independent recollection as to what witnesses were present when it was executed, explaining that he had done the agreement as a friend, not as an attorney. Burguieres thought it was unusual that Mr. Ritz did not want the document recorded, since it would not be effective against third parties unless recorded. He did not recall attending the Ritz wedding or reception, although he identified himself in photographs with Mr. Ritz taken on what "could very well be" the wedding day. He did not recall taking a marriage contract to the reception, although he often brought documents to dinner parties. He also did not recall going to the Ritz home to tear up the contract.
David Dileo, the "best man" at the Ritz wedding, testified that he saw the fully executed agreement, signed by all parties, on the night before the wedding. Carolyn Sue Ritz, stepmother of Craig, testified to the same effect, i.e., that she saw the fully executed document on the wedding eve. Ray Black, a friend of Mr. Ritz, testified that both Mr. and Mrs. Ritz told him that they were separate in property.

ANALYSIS
La.C.C. Art. 2328 states:
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.
La.C.C. Art. 2329 states:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval. [Emphasis supplied].
La.C.C. Art. 2331 states:
A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic *1184 act or by an act under private signature duly acknowledged by the spouses.
La.C.C. Art. 1833 states:
An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed.
To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it.

If a party is unable or does not know how to sign his name, the notary public must cause him to affix his mark to the writing.
[Emphasis supplied].
Under the above statutes, we find it is clear that a contract which changes the legal regime from one of community property to a regime of being separate in property may be executed before or after the marriage takes place. La.C.C. art. 2331.
However, in order for such agreement to be valid after a marriage occurs, but while still during the marriage, it is necessary for them to jointly petition the court and obtain a ruling that such a modification is in their best interests and that they understand the governing principles and rules. La.C.C. Art. 2329, supra.
In the present case, there is no evidence that such a petition was ever filed or pled, nor was any such court ruling made. Therefore, in order for the defendant, Mr. Ritz, to prevail in this case, it is necessary that a valid agreement executed prior to the marriage be proven.

VALIDITY AS AN AUTHENTIC ACT
The First Circuit stated in DiVincenti v. McIntyre, 611 So.2d 140 (La.App. 1 Cir.1992):
An authentic act constitutes full proof of the agreement it contains. La.C.C. Art. 1835. Because the authentic act is clothed with a presumption of genuineness, the party attacking the authenticity of the act bears the burden of proving the invalidity... The law accords a high degree of sanctity to authentic acts ...
Consequently, the party seeking to prove the invalidity of the act must present evidence beyond a mere preponderance. In [Eymard v. Terrebonne, 560 So.2d 887 (La.App. 1 Cir.1990] this court required `convincing proof' to invalidate an authentic act.
We agree with the above analysis of the requisite proof required to invalidate an authentic act. In the present case, the trial court made rather strong statements, which we need not repeat here, relative to the credibility of the witnesses. In her judgment, the trial judge determined, as a matter of fact, that Mr. Healy did not sign the document until after the marriage took place. Credibility determinations by the trial judge, or jury, are subject to the strictest deference and the manifest errorclearly wrong standard demands great deference for the findings of the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993), Canter v. Koehring Co., 283 So.2d 716 (La.1973). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was a reasonable one. Stobart, supra at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Stobart, supra at 882.
[Emphasis supplied].
Our careful review of the record before us compels us to agree that the evaluation of credibility here by the trial judge was *1185 a reasonable one and, therefore, we have no grounds to disturb it. We are particularly impressed by the testimony of Sylvia Landry, the attorney, who stated that Mr. Ritz told her the agreement was not executed properly, and who also stated that in acts of sale which she handled, Mr. Ritz told her that he had a community property regime; and with the testimony of Mrs. Healy; and with the testimony of Mr. Healy. The recitations of these witnesses, as well as other evidence mentioned hereinabove, convinces us that strong proof was, indeed, submitted to rebut the presumption of the authenticity of the notarized act. Obviously, the trial judge did not believe any testimony to the contrary.
To this we add the fact that the notary in the present case, Mr. Burguieres, testified that he had no specific, or independent recollection of the execution of the contract; and we also take cognizance of the documents evidencing the fact that Mr. Ritz, in his business dealings, did not act as though a valid prenuptial agreement was in effect; nor did he even attempt to record the document in order to be effectual against third persons, until just before the divorce proceedings began.
Since Mr. Healy, one of the two signatory witnesses to the agreement, did not, in fact, witness the signature of Mr. or Mrs. Ritz, the contract fails to qualify as an authentic act under La.C.C. art. 1833, infra.

VALIDITY AS AN ACT UNDER PRIVATE SIGNATURE
La.C.C. art. 1834 states that:
An act that fails to be authentic ... because of a defect of form may still be valid as an act under private signature,
and art. 2329 ... requires the act under private signature be duly acknowledged.
La.C.C. art. 1836 states:
An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof.
An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.
Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.
Mr. Ritz avers that because Mrs. Ritz admitted in court, as well as in her deposition, that she signed the document, the contract has been duly acknowledged and thus qualifies as an act under private signature. However, there is nothing in the record to indicate that any acknowledgment took place prior to or even during the marriage. We note that La.C.C. art. 2331, supra, has made acknowledgment a requisite to the validity of a matrimonial contract under private signature. Except for the exception stated in art. 2329, supra, just as all requirements of a pre-marital authentic act must be met prior to the marriage, so too, must all elements of an act under private signature duly acknowledged be done prior, or antecedent, to the marriage. Therefore, we conclude, since both parties apparently concede that the document in question here was executed prior to the marriage, that defendant, Mr. Ritz, is precluded from asserting any acknowledgment that was not made prior to the marriageand apparently no such attempt was made.
Accordingly, we find no error in the determination of the trial court that the alleged pre-marital contract between the parties was null and void ab initio.

DECREE
For the foregoing reasons, the judgment declaring the pre-nuptial contract between Carolyn Rapier Ritz and Craig Ritz to be null and void ab initio is affirmed. Appellant is taxed with all costs of this appeal.
AFFIRMED.