WEIMER, J.,
dissenting.
|, The venerable Louisiana Civil Code[1] was written and enacted as an interrelated, complete body of private, substantive *941 law to be read in pari materia. Authority more learned than myself remarked that our Civil Code “is supposed to be a self-sufficient and logically interdependent enactment, to be construed as a whole,” through a systematic and logical analysis of all the legislative enactments available for decision of the particular question presented. Albert Tate, Jr., Techniques of Judicial Interpretation in Louisiana, 22 La. L. Rev. 727, 728 (1961-62). By that measure, this | ^should be a case resolved through a logical and straightforward application of the relevant provisions of the Civil Code.
This case concerns the validity of a matrimonial agreement, signed by both spouses before a notary and one witness four days prior to their January 29, 2002 marriage, and acknowledged by the spouses subsequent to their marriage. La. C.C. art. 2331 addresses the matrimonial agreement and establishes the form that agreement must take:
A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.
There is no dispute that the matrimonial agreement in this case was not in authentic form; therefore, the question becomes whether it was an “act under private signature duly acknowledged by the spouses” within the meaning of La. C.C. art. 2331 when it was executed prior to the marriage, but acknowledged thereafter.
The “act under private signature duly acknowledged” is not defined in Article 2331, nor in any other provision in the title on Matrimonial Regimes, but it is addressed in the title on Obligations in General, to which one is directed by the provisions of the Code itself. See, La. C.C. arts. 1915,[2]1916,[3] and C.C. art. 2328, Rev. comments (b).[4] In the chapter entitled Proof of Obligations, La. C.C. art. 1836 provides:
Is An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof.
An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.
Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.
*942 Significantly, there is no provision in this article requiring that the acknowledgment occur at the same time or within a certain time of the original execution. This is consistent with the concept of the acknowledgment as a form of proof: the acknowledgment verifies that the signatures on the act are what they purport to be and, thus, adds to the reliability of the act as the document that was actually executed by the parties. Such proof is only necessary when, as La. C.C. 1831 explains, a party demands performance of the obligation or seeks to establish that the “obligation is null, or that it has been modified or extinguished.” Thus, a requirement that the acknowledgment occur contemporaneous with, or within a certain time of the execution of the act, is not only not required by the Civil Code, it is counterintui-tive to the very purpose of the acknowledgment.
The Code article to which one is directed in the absence of a specific provision in the Matrimonial Regimes title-La. C.C.art. 1836, the article defining the act under private signature duly acknowledged-imposes no temporal requirement, but rather establishes that the act of acknowledgment is a matter of proof, and not form. There is no provision in the Matrimonial Regimes title requiring that the acknowledgment of a matrimonial agreement be executed pri- or to the marriage. Thus, the logical 1 conclusion to be drawn from an analysis of the relevant Code articles is that the matrimonial agreement at issue in this case-an agreement executed prior to the marriage and acknowledged thereafter-is valid and enforceable.
This fundamental civilian approach to resolution of the issue presented is the one that was adopted by the court of appeal; and, it is the approach endorsed by the legal commentators. In fact, in the Louisiana Civil Law Treatise on matrimonial regimes, after reciting the two forms required for matrimonial agreements under La. C.C. art. 2331-an authentic act or an act under private signature duly acknowledged-the authors explain:
The alternative form is the “act under private signature that is acknowledged by the spouses.” The general rules of authentication of private acts do not provide any express time period. Consistent with the policy that the interest at stake is evidentiary rather than cautionary, it should be permissible to authenticate a matrimonial agreement at any time. No statute seems to require that the authentication occur before the marriage.
Indeed, in Acurio v. Acurio, [50,709 (La.App. 2 Cir. 6/22/16), 197 So.3d 253], the Second Circuit Court of Appeal held that a prenuptial agreement dated four days prior to the parties’ marriage was valid even though it was not acknowledged until nearly two years later. The court emphasized not only the failure of any statutes to require acknowledgment within a specific period, but also the purpose of the requirement to have the parties “recognize the signatures as their own.”
16 A. Carroll & R. Moreno, Louisiana Civil Law Treatise: Matrimonial Regimes, § 8:7 (4th ed., Supp. 2016-17) (footnote omitted).[5]
*943 I ¡Nevertheless, and despite the absence of any codal provision directing that acknowledgment of a prenuptial matrimonial agreement antedate the marriage, the majority imposes such a requirement under the aegis of protecting “the strong legislative policy favoring, community rights.” Acurio v. Acurio, 16-1395, slip o.p. at 5 (La. 5/—/17). The- majority mines this policy from the provisions of La. C.C. art. 2329, which it contends must be read 'in pari materia with La. C.C. art. 2331. Id.
While it is true that laws on the same subject matter must be interpreted in reference to each other (see La. C,C. art. 13) the majority applies that precept here to the exclusion of other equally relevant provisions of the title. For example, La. C.C, art. 2328 receives no mention in the majority’s analysis. Yet, this article defines the matrimonial agreement. and further declares: “Spouses are free to establish by matrimonial agreement a regime of separation,of property or modify the -legal regime as provided by law.” La. C.C. art. 2328. Rather than evidence a “strong legislative policy. favoring community rights,” this article provides the parties with almost complete freedom of contract,[6] relegating the provisions of the legal regime to a suppletive role. See La. C.C. art. 2328 (“The provisions of the legal regime that have not been excluded or modified by agreement retain their forcé and effect”).
Moreover, the majority’s characterization of La. C.C. arts. 2329 and 2331 as laws on the “same subject matter,” is questionable. While Article 2329 appears in the same title as Article 2331, the procedure described in Article 2329 addresses the [ (¡attempt to modify or terminate a matrimonial regime during marriage, a situation that is not implicated in this case. Simply because the legislature has made a conscious decision to make it more onerous to change the regime during marriage (once rights and obligations have attached) does not mean that the legislature intended the same with respect to agreements confected prior to marriage. Indeed, the opposite appears to be true. As noted by Professors Spaht and Samuel, members of the Advisory.Committee to the Joint Legislative Subcommittee Revising Louisiana’s Community Property Laws, the judicial approval required under Article 2329 when spouses seek to enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage was interposed as a procedural safeguard to protect the spouse whose contributions to the marriage were non-economic, from overreaching by the spouse who contributes economically. Katherine S. Spaht & Cynthia Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La. L. Rev. 83, 90-91 (1979-1980). The fact that the legislature did not express the *944 same concerns with respect to matrimonial agreements executed prior to marriage and, thus, did not extend similar solemnities and safeguards to such agreements did not go unnoticed by these same commentators:
Furthermore, Act 709[7] permits matrimonial agreements to be made by an act under private signature duly acknqwl-edged by the spouses, as well as by an authentic act, whereas Act 627 [the predecessor Act] required the solemn formalities of an authentic act. An acknowledgment of the execution of a contract, unlike an authentic act, does not entail the customary reading or paraphrasing by the notaiy of the act’s contents to the parties in the presence of witnesses. The acknowledgment is thus not as likely as is an authentic act to alert a spouse to the seriousness of what he is doing. It is, therefore, surprising that the lesser formalities are |7permitted in legislation which, in its other provisions, is concerned with spousal overreaching.
Id. at p. 92.
Through its in pari materia reading of La. C.C. arts. 2329 and 2331, it appears the majority effectively interposes a requirement into the law concerning prenuptial marital agreements that is not present in the language of the article, based on a concern not expressed by the legislature. In short, there is simply no basis in the language or legislative history of La. C.C. art. 2329 for the conclusion that by requiring judicial approval of modifications or terminations of matrimonial agreements during marriage, the legislature intended to “elevatfe] proof to a matter of form,” in La. C.C. art. 2331. See, Acurio, slip op. at 5.
Ultimately, the question that is presented to this court for resolution is whether the matrimonial agreement executed by the Acurios prior to their marriage is effective as “an'act under private signature duly acknowledged by the spouses.” La. C.C. art. 2331. Despite the direct relevance of La. C.C. art. 1836 to this question, the majority attempts to limit consideration to the Code articles in the title on matrimonial regimes. It does so under the guise of La. C.C. art. 1916 and the characterization of the matrimonial agreement as a nominate contract. However, La. C.C. art. 1916 applies by its terms only if the respective title-here, the title on Matrimonial Regimes -acts to “modify, complement, or depart from” the rules of conventional obligations. La. C.C. art. 1916. As indicated above, the majority in this case simply presumes such a modification or departure (where none is expressed) based on a perceived legislative intent “to make it onerous to waive one’s community property rights” and “[enter] into a matrimonial agreement that is not favored by public policy.” Acurio, slip op. at 5-6. However, the majority’s foundational premise-that the matrimonial agreement is not|Rfavored by public policy and therefore “procedural hurdles were put in place to ensure the parties consider the consequences of entering into a matrimonial agreement”-fails to account for the fact that the legislature has moved away from imposing the legal regime on all married persons and has provided, through La. C.C. art. 2328, that spouses are now free to establish the matrimonial regime of their choice.
*945 In any event, after eschewing resort to the code articles on general obligations, the majority turns its attention to those very articles, in particular to La. C.C. art. 1835, to argue that given the “sancti[tyj” accorded authentic acts, “it makes little sense to present as an option a heightened burden for execution of an agreement when a much less stringent one would suffice.” Acurio, slip op. at 7. However, this is precisely what the language of La. C.C. art. 2331 contemplates when it uses the disjunctive “or.” Louisiana C.C. art. 2331 provides that the matrimonial agreement “shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.” (Emphasis added.) As the commentators have noted, the fact that the agreement can be executed as either an authentic act or an act under private signature duly acknowledged underscores the purpose of the requirement as one of proof rather than form:
The authentic act requirement for matrimonial agreements does not serve the typical cautionary function of the authentic act because the act may be a simple written agreement that is acknowledged at a later time. Thus, the policy behind this requirement, then, is simply an evidentiary one adding to the reliability of the writing as what was actually executed by the parties. Although normal authentication is adequate if done by one party to the agreement, Louisiana Civil Code Article 2331 requires that the act be acknowledged “by the spouses,” presumably meaning both of them.
16 Carroll & Moreno, Louisiana Civil Law Treatise:'Matrimonial Regimes, § 8:7 at p. 861-862 (footnotes omitted).
I ci“[L]egislation is the superior source of law in Louisiana.” La. C.C. art. 1, Rev. cmt. (a). When a law is clear and unambiguous and its application does not lead to absurd consequences, it must be applied as written and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9. In this case, the relevant law is that contained in La. C.C. art. 2331 and in La. C.C. art. 1836 (which is made applicable by La. C.C. arts. 1915 and 2328, Rev. cmt. (b)). Contrary to the majority’s suggestion, there is nothing ambiguous about the phrase “by authentic act or by an act under private signature duly acknowledged by the spouses,” as it appears in La. C.C. art. 2331 and, thus, there is no need to go in search of a legislative intent that is otherwise clearly conveyed by the words of the relevant Code articles.
In the final analysis, under the guise of protecting the legal regime, the majority overlooks changes to our matrimonial regimes law which provide for freedom to contract for a regime of the spouses’ choice, and the clear and unambiguous language of La. C.C. arts. 2331 and 1836. Furthermore, it does so in a case in which there is no indication that the spouses did not enter into the matrimonial agreement with their eyes wide open, having married previously and divorced. Indeed, it was Mrs. Acurio who drafted the prenuptial agreement, which was signed by both parties four days prior to their marriage. Both parties have acknowledged their signatures on the matrimonial agreement and, during their marriage, they conducted .their financial lives consistent therewith (with the exception of a single business enterprise). In fact, when Dr. Acurio bought the home in which they lived with his separate funds, Mrs. Acurio appeared and signed the deed and affirmed that the house was Dr. Acurio’s separate property. She stated under oath in her deposition that she signed the agreement. Under these circumstances, it is clear that Mrs. Acurio judicially acknowledged her signature and the agreement. Because there is no requirement that the | t (Acknowledgment of the spouses’ signa *946 tures be executed prior to the marriage, it follows that the prenuptial agreement is an act under private signature duly acknowledged and is, therefore, valid and enforceable.
I respectfully dissent from the majority’s .conclusion to the contrary.

. See the Civil Code of Louisiana and Ancillaries, Revision of 1870, at v (Ralph Slovenko ed., Claitor’s Publishing Division (2nd ed. 1981)), in which Louisiana Chief Justice John Baptiste Fournet stated in the introduction:
The uniqueness of the Louisiana civil law in the United States, and, for that matter, in world law, has long been the subject of verbal comment and learned treatises. The code in which this law is embodied has been called "the most perfect child of the civil law,” praised as “the clearest, fullest, the most philosophical, and best adapted to the exigencies of modern society,” and *941 characterized as "perhaps the best of all modern codes throughout the world.”
See also John T. Hood, Jr., The History and Development of the Louisiana Civil Code, 19 La. L. Rev. 18 (1958):
Based on Roman law, modeled after the great Code Napoleon, enriched with the experiences of at least twenty-seven centuries, and mellowed by American principles and traditions, it is a living and durable monument to those who created it. After 150 years of trial, the Civil Code of Louisiana remains venerable, a body of substantive law adequate for the present and capable of expanding to meet future needs.

.La. C.C. art. 1915 directs:
All contracts, nominate and innominate, are subject to the rules of this title.

. La. C.C. art 1916 provides:
Nominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title.

. La. C.C. art. 2328, Rev. cmt. (b) provides, in pertinent part:
A matrimonial agreement is governed by the general rules of conventional obligations unless otherwise provided in this Title.

. These commentators go on to distinguish and dismantle the reasoning of the appellate courts that have reached a contrary conclusion. For example, the conclusion of the Fifth Circuit in Ritz v. Ritz, 95-683, p. 12 (La.App. 5 Cir. 12/13/95), 666 So.2d 1181, that "just as all requirements of a pre-marital authentic act must be met prior to the marriage, so too, must all elements of an act under private signature duly acknowledged be done prior, or antecedent to the marriage” is dismissed by the commentators as "dictum” and lacking authority. 16 Carroll & Moreno, Louisiana Civil Law Treatise: Matrimonial Regimes, § 8:7 at p. 861 n.14. Likewise, the result in Lauga v. *943 Lauga, 537 So.2d 758 (La.App.,4 Cir. 1989), is called into question:
Lauga may appear to be a. straightforward analysis of these form ánd authentication requirements, but the result may be questioned. Under the requirements for private acts "duly acknowledged,” there is no requirement that the acknowledgment be at the same time or within a certain stated time of the original execution. Thus, it s.eems that in 1986, the parties could have simply acknowledged their first agreement by appearance between a notary and two witnesses. Indeed, since their 1986 appearance before the notary was to execute what appeared to be the same agreement they executed before, it arguably constituted an acknowledgment.
16 Carroll & Moreno, Louisiana Civil Law Treatise: Matrimonial Regimes, § 8:7 atp. 862-63.

. This contractual freedom is limited only by the requirement that the agreement not address matters that, are prohibited by public policy. See, La. C.C. art. 2329.

. Through 1978 La. Acts 627, the legislature revised the laws on matrimonial regimes, repealing "head and master” and replacing it with an equal management scheme. The effective date of Act 627 was postponed, however, to allow the legislature and its Advisory Corn-mittee to make any adjustments deemed necessary once the public was introduced to the revisions. This resulted in the enactment of 1979 La. Acts 709, § 1, which contains the provisions at issue in this case. See, Spaht & Samuel, supra, at 83-84.