173 So.2d 882 (1965)
Edward KING
v.
Mildred L. CLARK, Wife of Edward KING.
No. 1824.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1965.
*883 Dodd, Hirsch, Barker & Meunier, Harold J. Lamy, New Orleans, for plaintiff-appellant.
Henry C. Vosbein, Jr., New Orleans, for defendant-appellee.
Before McBRIDE, REGAN and HALL, JJ.
REGAN, Judge.
Plaintiff, Edward King, instituted this suit against his wife, Mildred L. Clark King, endeavoring to obtain a divorce predicated upon LSA-R.S. 9:301, which permits either spouse to obtain a judgment of absolute divorce upon proving that they have lived separate and apart for two years.
The defendant is a non-resident absentee; therefore, answer was filed on her behalf by a curator ad hoc, who merely denied the pertinent allegations of the plaintiff's petition.
From a judgment in favor of the defendant dismissing the plaintiff's suit, he has prosecuted this appeal.
The record reveals that the plaintiff is thirty-six years of age and has been in the service of the United States Army for approximately eighteen years. He was reared in Mississippi by his parents, and when he was about fifteen years of age he obtained employment in the City of New Orleans. Sometime later, he returned to Mississippi and enlisted in the army; thereafter, he used his parents' Mississippi mailing address until they moved to New Orleans in the year of 1957.
Plaintiff married the defendant on November 11, 1955, in San Antonio, Texas, where he was stationed. He was then transferred to San Francisco, and later to Germany. He returned in 1961, and moved his wife and child from East Moline, Illinois, to New Orleans in July of that year, since he had been assigned to Camp Leroy Johnson.
On November 11, 1961, plaintiff and defendant quarreled, and as a result thereof he abandoned the matrimonial domicile. The defendant then left New Orleans and travelled to Pensacola, Florida, and from there to Nashville, Tennessee. The record does not indicate nor suggest that the plaintiff's military orders were related to the rupture of his marriage. He remained in New Orleans from November 11, 1961, until December 20, 1961, when he was ordered to San Antonio, Texas.
He resided in San Antonio until October, 1962, when he was again ordered overseas. Upon his return in 1964, he visited New Orleans on military leave and during the course thereof filed this suit for divorce.
While it is not apparent from the record, both counsel agree that the basis for the lower court's dismissal of the plaintiff's suit was its lack of jurisdiction over the marital status, emanating from the fact that neither party thereto was domiciled in this state.
There is no doubt that the defendant is not domiciled in Louisiana. Therefore, the usual vexatious question posed for our consideration is whether the plaintiff, a career military man, is domiciled in this state so as to confer jurisdiction on the courts thereof by virtue of the *884 rationale emanating from Article 10(7) of the LSA-Code of Civil Procedure, which reads:
"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
* * * * * *
"(7) An action of divorce, or of separation from bed and board, if one or both of the spouses are domiciled in this state and, except as otherwise provided by law, the grounds therefor were committed or occurred in this state, or while the matrimonial domicile was in this state."
Article 38 of the LSA-Civil Code provides that a person's domicile is the parish in which he has his principal establishment or habitual residence. A change of domicile is produced by the act of residing in the parish combined with the intention of making one's principal establishment there.[1] Hence, it is readily apparent that the mere fact that a person resides in a particular place does not of itself constitute that physical environment as his domicile. There must exist an intention on his part to make the parish his domicile, and this intention may be proved by an express written declaration registered with the "recorders" of the parish, or in the absence thereof upon all the circumstances surrounding his residence.[2]
It is, of course, the general rule that a person who becomes a member of the military service is presumed to retain his original domicile in the state from which he was inducted until he has abandoned it and established a new domicile elsewhere.[3] The burden of proving a change of domicile rests upon the party who endeavors to reveal a change thereof, and the presumption in favor of the original domicile will prevail if any reasonable doubt thereof exists.[4]
Residence in a state under military compulsion does not satisfy the requirement of a domicile of choice, in the absence of acts and circumstances clearly revealing an intention to establish a domicile therein.[5] While a person's statements are admissible as evidence of his intention to establish a domicile in a particular place, it is the obligation of the court to evaluate all of the circumstances thereof, together with the person's entire course of conduct, in order to ascertain whether he actually intends to remain there and make that place his domicile.[6]
In the opinion of Shockey v. Shockey,[7] the organ for the court pointed out several or more examples of an individual's actions which would indicate an intention to establish a permanent domicile in the state irrespective of the fact that the person was located therein by virtue of military compulsion. Some of the examples suggested by the court in that case were: voting, owning property, membership in a church, possessing a domestic establishment where one intended to return upon the termination of military service, owning a bank account, expressing to others his intention to reside in the place on a permanent *885 basis, joining clubs, and generally participating in civic activities.
Plaintiff testified that he considered New Orleans to be his legal domicile, and this assertion was corroborated by both his brother and father. He habitually spent his military leave in New Orleans, and used his father's address in New Orleans as his own. He also endeavored to vote by virtue of the absentee ballot in Louisiana in the 1956 and 1960 presidential elections; however, the record reveals that he was not registered to vote in this state. In addition thereto, he had designated Louisiana as his residence for the payment of state income taxes. He also related that he had chosen a place of residence in New Orleans upon his retirement from the armed forces; however, the record indicates that he has not purchased any real property or chosen a specific dwelling in which to reside.
The foregoing elucidation reveals that the trial judge was obviously confronted with conflicting evidence relative to the plaintiff's intention of establishing a domicile in this state. On the one hand, evidence had been adduced which indicated that the plaintiff possessed some family and other ties in the State of Louisiana, but on the other hand, the evidence revealed that he resided in New Orleans only from July to December of 1961, and did not fulfill the requirements of the other indicia of a legitimate domiciliary, examples of which we have referred to hereinabove.
It is too well settled to require citation in support thereof, that it is the general practice of the appellate courts of this state not to reverse a finding of fact by a lower court in the absence of manifest error. In this connection, we reiterate for the purpose of emphasis, the presumption that one in military service has retained his domicile may not be overcome as long as any reasonable doubt thereof exists.[8]
In view of the conflicting and nebulous evidence inscribed in the record, we are unable to conclude that the finding of fact by the lower court, i. e., that the plaintiff was not domiciled in this state, was so erroneous and unsupported by the record as to warrant a reversal by us.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiff is to pay all costs incurred herein.
Affirmed.
NOTES
[1] LSA-Civil Code Article 41.
[2] See LSA-Civil Code Articles 42 and 43; Zinko v. Zinko, 204 La. 478, 15 So.2d 859; Successions of Rhea, 227 La. 214, 78 So.2d 838; Foreman v. Jordan, La. App., 131 So.2d 796.
[3] See Spring v. Spring, 210 La. 576, 27 So.2d 358; Walcup v. Honish, 210 La. 843, 28 So.2d 452; Shockey v. Shockey, La.App., 149 So.2d 111.
[4] See Foreman v. Jordan, supra; Shockey v. Shockey, supra.
[5] Spring v. Spring, supra; Walcup v. Honish, supra; Shockey v. Shockey, supra.
[6] Successions of Rhea, supra.
[7] Supra.
[8] See Fereman v. Jordan, supra; Shockey v. Shockey, supra.