537 So.2d 758 (1989)
Beverly McDougall, wife of Ray Edward LAUGA, Sr.
v.
Ray Edward LAUGA, Sr.
No. 88-CA-0473.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Rehearing Denied February 16, 1989.
Bernard M. Plaia, Jr., Metairie, for appellee.
Ray Lauga, Chalmette, in pro. per.
Before CIACCIO, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This appeal arises out of an October 23, 1987 judgment ordering Ray Edward Lauga, Sr. to pay $100.00 per week in child support for his three minor children or $60.00 per week in the event Lauga's second wife, Wanda F. Nelson (Nelson) loses her job; denying Wanda Nelson's motion to quash the subpoena duces tecum which ordered her to produce any and all documents evidencing her income; denying Lauga's request for joint custody and ordering reasonable *759 visitation rights be reinstated as previously ordered by the court.[1]
FACTS:
Ray Edward Lauga, Sr. (Lauga) and Beverly McDougall Lauga (McDougall) were divorced on September 8, 1982. As per a consent judgment, McDougall was awarded the custody of their three minor children. Lauga was ordered to pay $1,000.00 per month child support. In the community property settlement entered into on September 9, 1982, Lauga gave McDougall the rights to his pension benefits derived from his employment with the St. Bernard Parish Sheriff's Office in the event he should lose his job. Said benefits would be in lieu of the child support ordered in the consent judgment of September 8, 1982.
On December 26, 1982, Lauga was fired from his job after being convicted in federal court. As per the community property settlement, Lauga signed over his pension funds to McDougall. On June 12, 1984, following appeals from his convictions, Lauga was sent to the federal penitentiary in Lexington, Kentucky. On June 13, 1985, Lauga and Nelson executed a pre-marital agreement establishing a separate property regime. On June 14, 1985, while still incarcerated in Kentucky, Lauga married Nelson. Lauga remained incarcerated until March 3, 1986 when he was sent to a halfway house in New Orleans. On March 31, 1986, Lauga and Nelson executed a second marital agreement reiterating the language of the first agreement. Said agreement was notarized by the Clerk of Court of St. Bernard Parish. The agreement, however, was not recorded at that time. On June 10, 1986, Lauga was released on parole. Since his release he has lived at 112 Phillip Court, Chalmette, Louisiana, the home of his wife, Wanda Nelson.
On August 28, 1987 McDougall filed the instant rule to set child support. She also filed a motion for production of documents pertaining to the income of Wanda Nelson. Lauga filed rules for change of custody, contempt and to reduce child support. He also filed a motion to quash the production of documents pertaining to Nelson's income asserting that the marital agreement of March 31, 1986 precluded such information.
On September 22, 1987, the date of the child support hearing, Nelson filed for registry with the Clerk of Court of St. Bernard Parish, the marital agreement executed March 31, 1986. On that same day, the trial court denied Lauga's motion to quash and ordered production of Nelson's records. The rule to fix child support was continued to October 2, 1987. On that day, Lauga failed to produce the requested documents. The rule was again continued. A subpoena duces tecum was then served upon Nelson to produce documentation of her income and assets. Nelson again filed a motion to quash the subpoena duces tecum asserting her income and assets were not relevant to the setting of child support as the marital agreement between them established a separate property regime.
On October 16, 1987, the date of the hearing, Nelson appeared in court without the requested documentation. The court ruled that evidence of her income was admissible, and under penalty of contempt ordered her to testify as to her income and assets. The remainder of the trial testimony consisted of evidence relative to Lauga's attempts to find work and evidence relative to the request for change of custody.
On October 23, 1987, the trial court rendered judgment in favor of McDougall and against Lauga denying Lauga's request for change of custody; denying Nelson's motion to quash the subpoena duces tecum and awarding $100.00 per week in child support; $60.00 per week in the event Nelson should become unemployed. It is from this judgment that Lauga appeals asserting the following assignments of error:
1) The trial court erred in denying Nelson's motion to quash and using her income and assets to determine the amount of child support to be paid by Lauga when a recorded marital agreement existed at the time of the hearing establishing a separate property regime;

*760 2) The trial court erred in determining that Lauga was unemployed due to his own neglect and failure;
3) The trial court erred in awarding an excessive amount of $100.00 per week child support;
4) The trial court erred in denying Lauga's request for change in custody.
ASSIGNMENT OF ERROR 1:
We disagree with Lauga's argument that the trial court erred in considering his wife's income in setting the child support award. This argument is premised on the fact that Lauga and his second wife, Nelson, entered into a matrimonial agreement establishing a regime of separate property. We find that neither agreement is valid.
Civil Code Article 2331 provides:
"A matrimonial agreement may be executed by the spouses before or during a marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." (emphasis added)
Civil Code Article 2329, provides in pertinent part:
"Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval." (emphasis added)
In this case there were two agreements executed. The first is dated June 13, 1985, prior to Lauga and Nelson's marriage. However, that document is neither an authentic act, nor an act under private signature duly acknowledged. See, La.C.C. Arts. 1833, 1836. Thus, the June 13th agreement fails to satisfy the requirement of Article 2331, which uses the term "shall", in describing the form of the agreement.
Having failed to effectuate a valid matrimonial agreement with their June 13, 1985 document, Louisiana's legal matrimonial regime of the community of acquets and gains governed the ownership and management of the Nelson-Lauga property. See, La.C.C. Arts. 2327, 2328. When they executed their second agreement on March 31, 1986 it was this legal regime that they were attempting to terminate. Arguably this latter document meets the requirements of Article 2331. Nevertheless, it fails to meet the mandates of Article 2329, so that the legal regime continues to govern the ownership and management of their matrimonial property.
Prior to his incarceration in Kentucky, Lauga was a resident of St. Bernard Parish. The fact that he was involuntarily incarcerated in Kentucky does not make him a domicilliary of Kentucky. The language of the first agreement clearly manifests Lauga and Nelson's recognition of their being Louisiana residents. It provides that all property "shall remain theirs forever and not encompassed into the community property brought about by the marriage." Kentucky is not a community property state. There is no evidence to show that Lauga and Nelson ever intended to change their domiciles to Kentucky during his incarceration.
A party seeking to prove a change in domicile must overcome the presumption that it has not been changed by positive and satisfactory proof of the establishment of another, the intention to remain there, and the abandonment of the former domicile. In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1952); King v. King, 173 So.2d 882 (La.App. 4th Cir.1965); LaFleur v. Seaboard Fire and Marine Insurance, 296 So.2d 860 (La.App. 3rd Cir.1974), writ denied 300 So.2d 185. The presumption of the original domicile prevails if any reasonable doubt thereof exists. King v. King, supra.
Lauga and Nelson are, and always have been domiciled in Louisiana. Therefore, the marital agreement executed by them on March 31, 1986 is valid only upon "joint petition and a finding by the court *761 that [it] serves their best interests and that they understand the governing principles and rules." There is no evidence to show this requirement was met. And, because the parties were always Louisiana domicillaries, the last sentence of Article 2329 is inapplicable.
Therefore, because neither agreement is valid, the trial court was correct in considering Nelson's income in determining the amount of child support. Marcus v. Burnett, 282 So.2d 122 (La.1973); Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954).
ASSIGNMENTS OF ERROR 2 AND 3:
Lauga argues the trial court erred in finding his unemployment was due to his own neglect. In support he cites Warner v. Warner, 425 So.2d 706, 707 (La.1982). In that case, our Supreme Court found that child support was properly denied under the existing circumstances of the case. The circumstances were that the mother was unemployed, could not find a job, and apparently the custodial father's available income was sufficient to support the children. In that case we cannot ascertain how much effort was put forth by the mother in securing work. We therefore cannot conclude that the Warner decision is controlling in every situation where a non-custodial parent is unemployed.
In the instant case, Lauga testified that he attended paralegal classes at night for a total of seven hours per week. All of his days are free and he is in good health. The record further reflects that Lauga has worked at several jobs since being released from prison and has made support payments of $50.00 while being employed. Lauga testified that he was unable to secure jobs which required that he be bonded because of his criminal record. However, there is no showing made that he is unable to find a job that does not require that he be bonded.
The fact that Lauga is unemployed does not relieve him of his obligation to support and maintain his children. He would be excused from this obligation if it is shown that he is not only unemployed, but unemployable. Sykes v. Sykes, 308 So.2d 816 (La.App. 4th Cir.1975). Lauga has not made such a showing. Therefore the trial court did not err in considering Lauga's ability to work.
Fathers and mothers are obligated to support and maintain their children. La. C.C. Art. 227. The circumstances of the obligor, and the needs of the child are the factors to be considered in determining the amount. La.C.C. Art. 231. The trial court awarded $100.00 per week for the support of three children. The record shows that the mother, McDougall, has total household expenses of $1,228.00 per month, including approximately $913.00 allocated to the children's needs. Her net income is $685.00 per month. Nelson nets $268.00 per week. Considering all of these factors, including the possibility of Lauga securing a job, we cannot say the trial court abused its great discretion in awarding $100.00 per week.
ASSIGNMENT OF ERROR 4:
Lauga asserts the trial court erred in denying his request for joint custody. We disagree.
The permanent custody of the children was awarded to McDougall. Once the trial court has made a considered decree of permanent custody, parties seeking change bear a heavy burden. They must prove either that continuation of present custody is so detrimental to the child as to justify a modification or prove by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by it's advantages to the child. Bergeron v. Bergeron, 492 So. 2d 1193 (La.1986). When there are substantial conflicts between the parties which makes joint custody unworkable, then joint custody is not to be awarded. Turner v. Turner, 455 So.2d 1374 (La.1984). Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse. Estes v. Estes, 261 La. 20, 258 So.2d 857 (La.1972); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971).
*762 The trial court acknowledged the ongoing conflict between the parties and found no evidence to warrant a change in custody. After a careful review of the record, we find the trial court did not abuse its discretion.
For the above and foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] The judgment makes no mention of a denial of Lauga's request for joint custody. However, the Court's written reasons for judgment clearly show the court denied Lauga's request.