ARMSTRONG, Judge.
On April 11, 1990, plaintiff/respondent, Arkoma Associates (“Arkoma”), instituted this action in Orleans Parish Civil District Court against defendants/relators C. Tom Carden (“Carden”) and Leonard L. Limes (“Limes”), as guarantors of Magee Drilling Company’s performance as the lessee of equipment leased from Arkoma. Respondent’s petition stated that Carden was domiciled in Orleans Parish, Limes in Jefferson Parish.
*293 Carden’s wife accepted domiciliary service at his residence in Orleans Parish. Relators filed an exception of improper venue, alleging that they were both domiciled in St. Tammany Parish. The trial court overruled the exception and denied relator’s motion for a new trial. Relators initially filed a notice of appeal which was denied by the court on the ground that the only review available for the denial of the exception was by writ. Relators subsequently filed this application for writs.
The dispositive issue before this court is whether the trial court erred in overruling relators’ exception. For the following reasons we find that the trial court erred.
By stipulation between the parties, Car-den’s deposition was submitted at the trial of the exception, in lieu of testimony. In the deposition Carden stated that he is registered to vote in Orleans Parish; his Louisiana driver’s license indicates that his residence is 1717 Oriole Street in Orleans Parish; that residence is fully furnished; he keeps a full set of clothes at the Orleans Parish residence; he spends three to four nights a week at the Orleans Parish residence; most of his credit card statements go to his office in Orleans Parish; both he and his wife’s automobiles are inspected in Orleans Parish; he pays all of his bills from his office in Orleans Parish; he receives ninety percent of his mail at his office in Orleans Parish; he has telephone lines at the Orleans Parish residence; his son and daughter reside at the Orleans Parish residence during the week; he has maid service two days a week and a gardener one day a week at the Orleans Parish residence; he spends between one-third and one-half of his weekends at the Orleans Parish residence.
In his deposition he also stated that: he has never voted in St. Tammany Parish; both he and his wife’s cars are registered in St Tammany Parish; he has two telephone lines at the St. Tammany Parish residence; he conducts his real estate and farming business in St. Tammany Parish; he spends three to four nights per week at his St. Tammany Parish residence; he almost always spends the weekends at the St. Tammany Parish residence — at least two-thirds of the weekend period; his son and daughter spend the weekends at the St. Tammany Parish residence; he has maid service three days a week and a full time gardener at the St. Tammany residence; and he keeps a full set of clothes at the St. Tammany Parish residence.
Carden also stated that the value of his home and land in St. Tammany Parish is in excess of five million, while the value of his home in Orleans Parish is valued at approximately one-tenth of that. Carden and his wife are not physically separated. Yet, he testified that his wife probably considers herself to be domiciled in Orleans Parish. Carden further stated that he had never instructed her to accept domiciliary service on his behalf in Orleans Parish.
Carden introduced into evidence true copies of declarations filed in the recorders offices of Orleans and St. Tammany Parishes, in which he declared, pursuant La.C.C. arts. 41 and 42, that it was his intention to change his domicile from Orleans to St. Tammany Parish. These declarations were dated, respectively, March 21, 1986, and April 1, 1986. There was no evidence as to the domicile of Limes, although in their exception it was claimed that he was domiciled in St. Tammany Parish also.
Based upon this evidence the trial court ruled that the evidence was “clearly conflicting” as to whether Carden had exhibited a “positive intent” to abandon Orleans Parish as his domicile. The court stated that it had “doubts” as to proof of a change in domicile. Therefore, the court ruled, venue was proper as to Orleans Parish. The trial court cited this court’s opinion in Lauga v. Lauga, 537 So.2d 758 (La.App. 4th Cir.1989) in its reasons for judgment.
Under La.C.C.P. arts. 73 and 42, an action against Carden and Limes — as joint or solidary obligors — may be brought in the parish of domicile of either one of them. Because there was no assertion by respondent that Limes was domiciled in Orleans Parish, Carden’s parish of domicile is the issue before us. If it is in Orleans Parish both he and Limes may be sued there. If *294 not, neither may be sued there. La.C.C. art. 38 defines domicile and states:
“The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.”
La.C.C. art. 41 provides for a change of domicile and states:
“A change of domicile from one parish to another is produced by the act or residing in another parish, combined with the intention of making one’s principal establishment there.”
There is a presumption against a change in domicile and a person seeking to establish such a change bears the burden of proving it. Gowins v. Gowins, 466 So.2d 32 (La.1985); Mason v. Mason, 399 So.2d 1272 (La.App. 4th Cir.1981).
In the instant case it is undisputed that Orleans Parish is considered Carden’s “domicile of origin.” It also is undisputed that Carden resides in each parish — in its response respondent refers to each home as Carden’s residence. Under La.C.C. art. 38, a person can be a resident of more than one parish. La.C.C. art. 38; Gowins v. Gowins, supra.
The evidence thus shows that Carden is unquestionably a resident of St. Tammany Parish. Based upon La.C.C. art. 41, all that is required to change one’s domicile is taking up residence in a parish, with the intention of making one’s principal establishment there.[1]
Under La.C.C. art. 41 the only question left is whether Carden proved his intention to make St. Tammany Parish his principal establishment. “This intention is proved in one of two ways: (1) by an express declaration of an intent to change domicile before the recorders of the parishes; or (2) by proof showing a change in circumstances.” (emphasis ours) Mason v. Mason, supra.
La.C.C. art. 42 allows a person to prove by declaration his intent to make his principal establishment in a different parish. It states:
“This intention [referring to Article 41] is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.”
“This declaration is made in writing, is signed by the party making it, and registered by the recorder.”
La.C.C. art. 43 provides for proof of intent to change domicile in those cases where the Article 42 declaration is not made. Mason v. Mason, supra; King v. King, 173 So.2d 882 (La.App. 4th Cir.1965). Article 43 states:
“In case this declaration is not made, the proof of this intention shall depend upon circumstances.”
The evidence shows that Carden resides in St. Tammany Parish and has declared by express declaration that he intends to make St. Tammany Parish his domicile. Under the law, La.C.C. arts. 38, 41 and 42, Carden has proven his intent to make St. Tammany Parish his domicile — all of the circumstances recited in this opinion are, implicitly, under La.C.C. art. 43, irrelevant as to proof of intent where the Article 42 declaration has been filed. Respondents would have this court treat the declaration as just one of the “circumstances” referred to in Article 43, to be considered along with the others to determine whether Carden has established his intention to make St. Tammany Parish his place of domicile. Such a view ignores the clear and unambiguous wording of the applicable codal scheme and *295 renders parts of it meaningless. La.C.C. art. 13.
There are several old Louisiana cases in which courts have found that Article 42 declarations were made in bad faith in an effort to perpetrate a fraud upon the courts or gain some unfair advantage.[2] In these cases the courts did consider the “circumstances,” but only to determine whether there had been such fraud or bad faith on the part of the party seeking to claim the benefit of the putative domicile.
The burden of proving that an Article 42 declaration was made in bad faith must be on the party challenging its authenticity. In the instant case Carden filed his declaration in 1986, fours years before this suit was filed against him in state court. Respondent claims in its brief that suit on the same cause of action was filed by it in federal court in 1985. A decision in respondent’s favor was reversed by the U.S. Supreme Court in 1990 after it found that the district court lacked jurisdiction for want of diversity — -the response contains no authentic proof of this fact. Even if this is true, however, we find no evidence from which to infer that Carden sought to change his domicile in 1986 to avoid being sued in Orleans Parish should the original district court decision be reversed in the future on the issue of diversity. Such a view would be too speculative.[3]
Nor can we find evidence of any other type of bad faith which would justify our disregarding the Article 42 declaration and considering all of the circumstances relevant to determining Carden’s intent to change his domicile as if the declaration had never been filed and the express language of La.C.C. arts. 41, 42 and 43 did not exist.
The trial court erred as a matter of law in ignoring the Article 42 declaration, and instead — absent evidence of fraud or bad faith — considering all of the Article 43 circumstances to determine that there was a “doubt” as to whether Carden intended to change his domicile from Orleans Parish to St. Tammany Parish.
For the foregoing reasons we reverse the judgment of the trial court. Relators’ exception of improper venue is maintained, and plaintiff/respondent Arkoma Associates’ suit is hereby dismissed, without prejudice, as to defendants C.T. Carden and Leonard L. Limes.
WRIT GRANTED.

. There is law to the effect that there must be proof of the abandonment of the "domicile of origin." See Lauga v. Lauga, 537 So.2d 758 (La.App. 4th Cir.1989). However, because a person can only have one domicile — one principal establishment — if there is an intent to establish a new principal establishment, and thus a new domicile, there necessarily must be a concomitant intent to abandon the domicile of origin.

. See Cole v. Lucas, 2 La.Ann. 946 (1847); Yerkes v. Broom, 10 La.Ann. 94 (1855); Watson v. Simpson, 13 La.Ann. 337 (1858).

. We note that, based upon respondent's statements of fact, the district court denied relators’ pretrial motion to dismiss the federal suit for want of diversity; the U.S. Fifth Circuit denied relators' interlocutory appeal on the district court decision; and the U.S. Supreme Court denied their petition for certiorari. Following trial on the merits and judgment against rela-tors, the U.S. Fifth Circuit affirmed the district court decision, in part, on the question of diversity. Finally, the U.S. Supreme Court granted certiorari and reversed the district court decision on the issue of diversity.