# Supreme Court of Louisiana

The Opinions handed down on the **3rd day of May, 2017**, are as follows:

**BY CLARK, J.**:

2016-C-1395     DANIELLE DEON DICKERSON ACURIO v. DR. MICHAEL THOMAS ACURIO (Parish of Bossier)

> For the reasons expressed above and in light of the strong public policy that favors the community property regime, we hold that for purposes of La. Civ. Code art. 2331, an act under private signature must be duly acknowledged prior to the marriage to be fully perfected and given legal effect. Thus, we reverse the court of appeal judgment and reinstate the district court judgment. We remand the matter to the district court for proceedings consistent with this opinion.
> REVERSED AND REMANDED.
>
> WEIMER, J., dissents and assigns reasons.
> HUGHES, J., dissents for the reasons assigned by Weimer, J. and assigns additional reasons.

# SUPREME COURT OF LOUISIANA

## No. 2016-C-1395

## DANIELLE DEON DICKERSON ACURIO

## VERSUS

## DR. MICHAEL THOMAS ACURIO

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF BOSSIER

**CLARK, Justice**

We granted this writ application to resolve a split among the appellate courts of our state regarding the proper interpretation of La. Civ. Code art. 2331. Specifically, we are tasked with determining whether parties must duly acknowledge their signatures prior to the marriage in order for the matrimonial agreement to have legal effect. We find the acknowledgment of the signatures to be a form requirement, and the failure to meet all form requirements prior to the marriage renders the matrimonial agreement invalid. Accordingly, we reverse the judgment of the court of appeal and reinstate the district court judgment. We remand for proceedings consistent with this holding.

### FACTS AND PROCEDURAL HISTORY

Danielle Deon Dickerson Acurio Cage, (hereinafter "the plaintiff"), and Dr. Michael Thomas Acurio, (hereinafter "the defendant"), married on June 27, 1998 for the first time. That marriage ended in divorce in 2000. On January 29, 2002, the parties married for a second time. Prior to this marriage, on January 25, 2002, the plaintiff and the defendant executed a document captioned "Prenuptial Agreement." The document was signed by the parties before one witness and a notary. It is undisputed that the agreement was not executed by authentic act. Also, the agreement did not contain an acknowledgment of the signature of either party.

In 2009, divorce proceedings began. A judgment of divorce was signed and filed on October 6, 2010. Property issues were to be decided at a November 2015 trial. However, in July of 2015, the plaintiff filed a Motion in Limine to Exclude Evidence of Invalid Matrimonial Agreement, seeking to exclude the 2002 document for failure to comply with the form requirements of La. Civ. Code art. 2331.

The district court granted the motion in limine, finding the matrimonial agreement was not executed by authentic act or act under private signature duly acknowledged prior to the marriage. Specifically, the district court noted "the first acknowledgment of [the signatures] was in the deposition of [the plaintiff] on July 8, 2010." Accordingly, it found the agreement was null and void "based upon the lack of form prior to the entering of the marriage." The defendant appealed.

The Second Circuit Court of Appeal reversed the district court's judgment on the motion in limine, holding the Prenuptial Agreement was valid and enforceable because spouses do not have to acknowledge their signatures prior to marriage. *Acurio v. Acurio*, 50,709 (La. App. 2 Cir. 6/22/16), 197 So.3d 253. The plaintiff filed the instant writ application. We granted the writ to determine whether the acknowledgment of the parties' signatures must occur prior to the marriage in order for the matrimonial agreement to be valid. *Acurio v. Acurio*, 16-1395 (La. 12/16/16), _So.3d_.

## DISCUSSION

### *Arguments of the Parties*

La. Civ. Code art. 2331 provides:

A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.

The plaintiff argues the spouses' signatures must be duly acknowledged prior to the marriage. In support of this argument, she contends La. Civ. Code art. 2331

must be read in conjunction with La. Civ. Code art. 2329, which provides, in pertinent part:

> Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon a joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules.

If spouses fail to enter into a valid matrimonial agreement before the marriage, La. Civ. Code art. 2329 requires them to jointly petition the court and obtain court approval to enter into a matrimonial agreement during marriage. According to the plaintiff's view, if the acknowledgment does not occur prior to the marriage, the agreement is not fully perfected and is, therefore, invalid. Thus, court approval would be required to enter into a matrimonial agreement post-nuptially. Reading these two articles jointly, as argued by the plaintiff, creates a temporal requirement for the acknowledgment to occur prior to the marriage.

The majority of the appellate courts in this state have agreed with the plaintiff's position. See *Ritz v. Ritz*, 95-683 (La. App. 5 Cir. 12/13/95), 666 So.2d 1181 (wherein the Fifth Circuit Court of Appeal invalidated a matrimonial agreement when the parties failed to duly acknowledge their signatures prior to the marriage); *Deshotels v. Deshotels*, 13-1406, p. 5 (La. App. 3 Cir. 11/5/14), 150 So.3d 541, 545 (wherein the Third Circuit Court of Appeal found a matrimonial agreement invalid "because the elements of form must have been perfected before the marriage" and a later "admission in court that [a spouse] signed the marriage agreement cannot act to retroactively resurrect the defective marriage agreement); *Rush v. Rush*, 12-1502 (La. App. 1 Cir. 3/25/13), 115 So.3d 508 (wherein the First Circuit Court of Appeal held that the spouses had to get court approval for a matrimonial agreement if the spouses had not acknowledged their signatures prior to the marriage); *Lauga v. Lauga*, 537 So.2d 758 (La. App. 4 Cir. 1989)(wherein the Fourth Circuit Court of

3

Appeal invalidated a matrimonial agreement for the spouses' failure to acknowledge their signatures prior to the marriage).

Conversely, the defendant contends the Second Circuit Court of Appeal in the instant case correctly ruled that acknowledgment has no temporal requirement and can occur at any time. Because La. Civ. Code art. 2331 does not expressly place a time element on acknowledgment, the defendant relies on the general law of obligations. Specifically, he cites to La. Civ. Code art. 1836, which states:

> An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof.
>
> An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.
>
> Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.

The defendant avers the validity of the private signature is a question of proof of the signatures by way of acknowledgment, which can be offered at any time. To support the notion that the acknowledgment is merely a matter of evidentiary proof and not an element of form, he sets forth La. Civ. Code art. 1838:

> A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. In case of denial, any means of proof may be used to establish that the signature belongs to that party.

### *Analysis*

Against this backdrop of opposing viewpoints, we begin our analysis with some basic tenets of civilian law. "Laws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13. "All laws pertaining to the same subject matter must be interpreted *in pari materia* . . . ." *Pierce*

*Foundations, Inc. v. Jaroy Construction, Inc.*, 15–785, p. 7 (La. 5/3/16), 190 So.3d 298, 303. The legal regime of community property is presumed. La. Civ. Code art. 2340. In light of this presumption and the strong legislative policy favoring community rights, we interpret statutory provisions which waive those rights *stricti juris*. (See *e.g. Rush*, 115 So.3d at 512; *Poirier v. Poirier*, 626 So.2d 868, 870 (La. App. 3 Cir. 1993), *writ denied*, 94-161 (La. 3/11/94), 634 So.2d 389.

We note the defendant's argument is primarily grounded in the apparent absence of a temporal requirement for acknowledgment in La. Civ. Code art. 2331. The defendant then navigates to the general rules of obligations to reach the conclusion that acknowledgment of a party's signature is simply an evidentiary matter that can be proven at any time. However, we find such a departure from the applicable rules on matrimonial agreements to be erroneous. La. Civ. Code art. 1916 specifically instructs, "[n]ominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title [conventional obligations or contracts]." For the reasons that follow, we find the collective rules assigned to matrimonial agreements, as nominate contracts, dictate that acknowledgment of spouses' signatures must occur prior to the marriage, elevating proof to a matter of form.

As noted by the plaintiff, La. Civ. Code arts. 2331 and 2329 must be read *in pari materia*, or in reference to each other. La. Civ. Code art. 2329 requires spouses wishing to enter into a matrimonial agreement during the marriage to seek court approval. Specifically, the court must be satisfied that such an agreement "serves [the parties'] best interests and that they understand the governing principles and rules." This requirement of court approval highlights the legislative decision to make opting out of the presumed community property regime a task that requires effort. Therefore, in reading these two statutes jointly, it is clear the legislature intended to make it onerous to waive one's community property rights, at least to the extent that

certain procedural hurdles were put in place to ensure the parties consider the consequences of entering into a matrimonial agreement that is not favored by public policy. Thus, if procedural burdens are placed on the spouses by way of authentic act before marriage and court approval during marriage, it logically follows that the relaxed act of signing one's private signature, without the accompanying requirement of it being duly acknowledged, is disallowed.

As further evidence of this conclusion, we look at the context within which the "private signature duly acknowledged" language is placed: as an alternative to the authentic act. Thus, we delve into a deeper analysis of the authentic act itself. La. Civ. Code art. 1835 provides "[a]n authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title." An authentic act has been said to be clothed with "a presumption of genuineness." *DiVincenti v. McIntyre*, 611 So.2d 140, 141 (La. App. 1 Cir. 1992). Authentic acts are afforded "a high degree of sanctity[.]" *Id.* For centuries now, we have recognized the convincing proof of an authentic act:

> The effect given by law to authentic acts, rests upon the presumption, that a public officer, exercising a high and important trust, under the solemnity of an oath, has done his duty when acting within the scope of his authority. Selected for their character, capacity and probity, as notaries are presumed to be, the law attaches full credit to their official acts. This prerogative is established in the interest of public order, to maintain peace among men, and *to prevent contestations concerning the proof or evidence of their conventions*.

*Succession of Tete,* 7 La.Ann. 95, 96 (La.1852). (emphasis added).

The interpretation adopted by the defendant and the Second Circuit in the instant case is contrary to the very goal envisioned by authentic acts, which is "to prevent contestations concerning the proof or evidence" that the signatures are indeed those of the parties. *Id.* Instead, the result advocated by the defendant would allow parties to contest their signatures during divorce proceedings, when parties are most contentious, sometimes decades after the document was executed. This

possibility is wholly contradictory to a "presumption of genuineness" or "full proof" of what the thing purports to be. *DiVincenti, supra* and La. Civ. Code art. 1835, respectively. The presumption of validity created by an authentic act gives the document immediate legal significance. There is no suspensive condition attached which must be fulfilled before the agreement can be perfected. Likewise, it stands to reason that the requirement of acknowledgment is one with similar temporal constraints and consequences such that the proof of one's signature is as much an element of proof as it is of required form.

The defendant would have us interpret La. Civ. Code art. 2331 as the parties' option of executing an authentic act or executing a contract under private signature, with the acknowledgment simply amounting to a means of proving the signatures at any time. However, both the authentic act and the acknowledgment language would be rendered superfluous if all that were required were the two individuals' signatures. As noted above, the joint reading of La. Civ. Code arts. 2331 and. 2329 evidences a legislative decision to put into place certain procedural obstacles to ensure due consideration is given to the matrimonial agreement before waiving the favored community property regime. Bearing in mind this legislative purpose, we find it would be illogical to give spouses the choice between the following unbalanced options: (1) executing a contract under such sanctified legal conditions as the requirement of a notary and two witnesses or (2) merely placing one's signature on a document without any external authentication. Rather, the placement of the option of "private signature duly acknowledged" within in the same bank of choices as an "authentic act" offers a window into the burden envisioned by the statute—a somewhat laborious one. In other words, it makes little sense to present as an option a heightened burden for execution of an agreement when a much less stringent one would suffice. As instructed by La. Civ.Code art. 12, the meaning of ambiguous words must be sought by examining the context in which they occur and

7

the text of the law as a whole. Thus, we find the very fact that "an act under private signature duly acknowledged" is presented as the sole alternative to an "authentic act" is a telling recognition that both methods of execution are meant to be sufficiently arduous so as to provoke thought and consideration before entering into the agreement.

Further, while we acknowledge that secondary sources are not controlling, we find the following treatise excerpt helpful and relevant: "The act under private signature duly acknowledged (also called an authenticated private act), the third type of act, is a hybrid of the authentic act and the act under private signature." 24 La. Civ. L. Treatise, Sales § 6:14. This scholarly commentary adds support to our holding that the language "act under private signature duly acknowledged" is a term of art that is more than just the sum of its parts. Rather, it, as a whole, is a hybrid of an authentic act and an act under private signature and cannot be dissected to mean an "act under private signature" that can be separately acknowledged later. This same treatise discussion specifically contrasts a matrimonial agreement with a general contract of sale, stating: "Although there are some agreements which are valid if confected by authenticated private act but not by private act [footnote reference to La. Civ. Code art. 2331 (matrimonial agreement)], the sale of an immovable is permissible by private act." This observation recognizes that a matrimonial agreement requires more than just a private act in order to be perfected, it requires "an authenticated private act", *i.e.,* acknowledgment of the signatures. Thus, this secondary source, while not governing, lends support to our holding that the placement of the requirement of proof ("duly acknowledged") in the same code article as the manner of execution of the act itself ("an act under private signature") elevates an evidentiary requirement to a form one, thereby creating a temporal element. Accordingly, we find in order to have legal validity, a matrimonial

8

agreement executed prior to marriage must be made by authentic act or signed *and* duly acknowledged prior to marriage.

Because the parties in the instant case did not acknowledge their signatures prior to their marriage on January 29, 2002, the district court correctly granted the plaintiff's motion in limine, finding the matrimonial agreement invalid for failure to comply with the form requirements of La. Civ. Code art. 2331. Any acknowledgment that occurred post-nuptially cannot be relied upon to cure a defect in form.

## CONCLUSION

For the reasons expressed above and in light of the strong public policy that favors the community property regime, we hold that for purposes of La. Civ. Code art. 2331, an act under private signature must be duly acknowledged prior to the marriage to be fully perfected and given legal effect. Thus, we reverse the court of appeal judgment and reinstate the district court judgment. We remand the matter to the district court for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

# SUPREME COURT OF LOUISIANA

## NO. 2016-C-1395

## DANIELLE DEON DICKERSON ACURIO

### VERSUS

## DR. MICHAEL THOMAS ACURIO

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF BOSSIER*

**WEIMER, J.**, dissenting.

The venerable Louisiana Civil Code[1] was written and enacted as an interrelated, complete body of private, substantive law to be read *in pari materia*. Authority more learned than myself remarked that our Civil Code "is supposed to be a self-sufficient and logically interdependent enactment, to be construed as a whole," through a systematic and logical analysis of all the legislative enactments available for decision of the particular question presented. Albert Tate, Jr., *Techniques of Judicial Interpretation in Louisiana*, 22 La. L. Rev. 727, 728 (1961-62). By that

---

[1] See the Civil Code of Louisiana and Ancillaries, Revision of 1870, at v (Ralph Slovenko ed., Claitor's Publishing Division (2nd ed. 1981)), in which Louisiana Chief Justice John Baptiste Fournet stated in the introduction:

> The uniqueness of the Louisiana civil law in the United States, and, for that matter, in world law, has long been the subject of verbal comment and learned treatises. The code in which this law is embodied has been called "the most perfect child of the civil law," praised as "the clearest, fullest, the most philosophical, and best adapted to the exigencies of modern society," and characterized as "perhaps the best of all modern codes throughout the world."

See also John T. Hood, Jr., *The History and Development of the Louisiana Civil Code*, 19 La. L. Rev. 18 (1958):

> Based on Roman law, modeled after the great Code Napoleon, enriched with the experiences of at least twenty-seven centuries, and mellowed by American principles and traditions, it is a living and durable monument to those who created it. After 150 years of trial, the Civil Code of Louisiana remains venerable, a body of substantive law adequate for the present and capable of expanding to meet future needs.

measure, this should be a case resolved through a logical and straightforward application of the relevant provisions of the Civil Code.

This case concerns the validity of a matrimonial agreement, signed by both spouses before a notary and one witness four days prior to their January 29, 2002 marriage, and acknowledged by the spouses subsequent to their marriage. La. C.C. art. 2331 addresses the matrimonial agreement and establishes the form that agreement must take:

> A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.

There is no dispute that the matrimonial agreement in this case was not in authentic form; therefore, the question becomes whether it was an "act under private signature duly acknowledged by the spouses" within the meaning of La. C.C. art. 2331 when it was executed prior to the marriage, but acknowledged thereafter.

The "act under private signature duly acknowledged" is not defined in Article 2331, nor in any other provision in the title on Matrimonial Regimes, but it is addressed in the title on Obligations in General, to which one is directed by the provisions of the Code itself. See, La. C.C. arts. 1915,[2] 1916,[3] and C.C. art. 2328, Rev. comments (b).[4] In the chapter entitled Proof of Obligations, La. C.C. art. 1836 provides:

---

[2] La. C.C. art. 1915 directs:

> All contracts, nominate and innominate, are subject to the rules of this title.

[3] La. C.C. art 1916 provides:

> Nominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title.

[4] La. C.C. art. 2328, Rev. cmt. (b) provides, in pertinent part:

> A matrimonial agreement is governed by the general rules of conventional obligations unless otherwise provided in this Title.

2

An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof.

An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.

Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.

Significantly, there is no provision in this article requiring that the acknowledgment occur at the same time or within a certain time of the original execution. This is consistent with the concept of the acknowledgment as a form of proof: the acknowledgment verifies that the signatures on the act are what they purport to be and, thus, adds to the reliability of the act as the document that was actually executed by the parties. Such proof is only necessary when, as La. C.C. 1831 explains, a party demands performance of the obligation or seeks to establish that the "obligation is null, or that it has been modified or extinguished." Thus, a requirement that the acknowledgment occur contemporaneous with, or within a certain time of the execution of the act, is not only not required by the Civil Code, it is counterintuitive to the very purpose of the acknowledgment.

The Code article to which one is directed in the absence of a specific provision in the Matrimonial Regimes title–La. C.C.art. 1836, the article defining the act under private signature duly acknowledged–imposes no temporal requirement, but rather establishes that the act of acknowledgment is a matter of proof, and not form. There is no provision in the Matrimonial Regimes title requiring that the acknowledgment of a matrimonial agreement be executed prior to the marriage. Thus, the logical

3

conclusion to be drawn from an analysis of the relevant Code articles is that the matrimonial agreement at issue in this case–an agreement executed prior to the marriage and acknowledged thereafter–is valid and enforceable.

This fundamental civilian approach to resolution of the issue presented is the one that was adopted by the court of appeal; and, it is the approach endorsed by the legal commentators. In fact, in the Louisiana Civil Law Treatise on matrimonial regimes, after reciting the two forms required for matrimonial agreements under La. C.C. art. 2331–an authentic act or an act under private signature duly acknowledged–the authors explain:

> The alternative form is the "act under private signature that is acknowledged by the spouses." The general rules of authentication of private acts do not provide any express time period. Consistent with the policy that the interest at stake is evidentiary rather than cautionary, it should be permissible to authenticate a matrimonial agreement at any time. No statute seems to require that the authentication occur before the marriage.
>
> Indeed, in **Acurio v. Acurio**, [50,709 (La.App. 2 Cir. 6/22/16), 197 So.3d 253], the Second Circuit Court of Appeal held that a prenuptial agreement dated four days prior to the parties' marriage was valid even though it was not acknowledged until nearly two years later. The court emphasized not only the failure of any statutes to require acknowledgment within a specific period, but also the purpose of the requirement to have the parties "recognize the signatures as their own."

16 A. CARROLL & R. MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 8:7 (4th ed., Supp. 2016-17) (footnote omitted).[5]

---

[5] These commentators go on to distinguish and dismantle the reasoning of the appellate courts that have reached a contrary conclusion. For example, the conclusion of the Fifth Circuit in **Ritz v. Ritz**, 95-683, p. 12 (La.App. 5 Cir. 12/13/95), 666 So.2d 1181, that "just as all requirements of a *pre-marital* authentic act *must* be met *prior* to the marriage, so too, must all elements of an act under private signature *duly acknowledged* be done *prior*, or antecedent to the marriage" is dismissed by the commentators as "dictum" and lacking authority. 16 CARROLL & MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 8:7 at p. 861 n.14. Likewise, the result in **Lauga v. Lauga**, 537 So.2d 758 (La.App. 4 Cir. 1989), is called into question:

> **Lauga** may appear to be a straightforward analysis of these form and authentication requirements, but the result may be questioned. Under the requirements for private acts "duly acknowledged," there is no requirement that the

Nevertheless, and despite the absence of any codal provision directing that acknowledgment of a prenuptial matrimonial agreement antedate the marriage, the majority imposes such a requirement under the aegis of protecting "the strong legislative policy favoring community rights." **Acurio v. Acurio**, 16-1395, slip op. at 5 (La. 5/__/17). The majority mines this policy from the provisions of La. C.C. art. 2329, which it contends must be read *in pari materia* with La. C.C. art. 2331. ***Id.***

While it is true that laws on the same subject matter must be interpreted in reference to each other (see La. C.C. art. 13) the majority applies that precept here to the exclusion of other equally relevant provisions of the title. For example, La. C.C. art. 2328 receives no mention in the majority's analysis. Yet, this article defines the matrimonial agreement and further declares: "Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law." La. C.C. art. 2328. Rather than evidence a "strong legislative policy favoring community rights," this article provides the parties with almost complete freedom of contract,[6] relegating the provisions of the legal regime to a suppletive role. See La. C.C. art. 2328 ("The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.").

Moreover, the majority's characterization of La. C.C. arts. 2329 and 2331 as laws on the "same subject matter," is questionable. While Article 2329 appears in the

---

acknowledgment be at the same time or within a certain stated time of the original execution. Thus, it seems that in 1986, the parties could have simply acknowledged their first agreement by appearance between a notary and two witnesses. Indeed, since their 1986 appearance before the notary was to execute what appeared to be the same agreement they executed before, it arguably constituted an acknowledgment.

16 CARROLL & MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 8:7 at p. 862-63.

[6] This contractual freedom is limited only by the requirement that the agreement not address matters that are prohibited by public policy. See, La. C.C. art. 2329.

same title as Article 2331, the procedure described in Article 2329 addresses the attempt to modify or terminate a matrimonial regime *during* marriage, a situation that is not implicated in this case. Simply because the legislature has made a conscious decision to make it more onerous to change the regime *during* marriage (once rights and obligations have attached) does not mean that the legislature intended the same with respect to agreements confected prior to marriage. Indeed, the opposite appears to be true. As noted by Professors Spaht and Samuel, members of the Advisory Committee to the Joint Legislative Subcommittee Revising Louisiana's Community Property Laws, the judicial approval required under Article 2329 when spouses seek to enter into a matrimonial agreement that modifies or terminates a matrimonial regime *during* marriage was interposed as a procedural safeguard to protect the spouse whose contributions to the marriage were non-economic, from overreaching by the spouse who contributes economically. Katherine S. Spaht & Cynthia Samuel, *Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law*, 40 La. L. Rev. 83, 90-91 (1979-1980). The fact that the legislature did not express the same concerns with respect to matrimonial agreements executed *prior to* marriage and, thus, did not extend similar solemnities and safeguards to such agreements did not go unnoticed by these same commentators:

> Furthermore, Act 709[7] permits matrimonial agreements to be made by an act under private signature duly acknowledged by the spouses, as well as by an authentic act, whereas Act 627 [the predecessor Act] required the solemn formalities of an authentic act. An acknowledgment of the execution of a contract, unlike an authentic act, does not entail the customary reading or paraphrasing by the notary of the act's contents to the parties in the presence of witnesses. The acknowledgment is thus

---

[7] Through 1978 La. Acts 627, the legislature revised the laws on matrimonial regimes, repealing "head and master" and replacing it with an equal management scheme. The effective date of Act 627 was postponed, however, to allow the legislature and its Advisory Committee to make any adjustments deemed necessary once the public was introduced to the revisions. This resulted in the enactment of 1979 La. Acts 709, § 1, which contains the provisions at issue in this case. See, Spaht & Samuel, *supra*, at 83-84.

not as likely as is an authentic act to alert a spouse to the seriousness of what he is doing. It is, therefore, surprising that the lesser formalities are permitted in legislation which, in its other provisions, is concerned with spousal overreaching.

*Id.* at p. 92.

Through its *in pari materia* reading of La. C.C. arts. 2329 and 2331, it appears the majority effectively interposes a requirement into the law concerning prenuptial marital agreements that is not present in the language of the article, based on a concern not expressed by the legislature. In short, there is simply no basis in the language or legislative history of La. C.C. art. 2329 for the conclusion that by requiring judicial approval of modifications or terminations of matrimonial agreements *during* marriage, the legislature intended to "elevat[e] proof to a matter of form," in La. C.C. art. 2331. See, **Acurio**, slip op. at 5.

Ultimately, the question that is presented to this court for resolution is whether the matrimonial agreement executed by the Acurios prior to their marriage is effective as "an act under private signature duly acknowledged by the spouses." La. C.C. art. 2331. Despite the direct relevance of La. C.C. art. 1836 to this question, the majority attempts to limit consideration to the Code articles in the title on matrimonial regimes. It does so under the guise of La. C.C. art. 1916 and the characterization of the matrimonial agreement as a nominate contract. However, La. C.C. art. 1916 applies by its terms only if the respective title–here, the title on Matrimonial Regimes –acts to "modify, complement, or depart from" the rules of conventional obligations. La. C.C. art. 1916. As indicated above, the majority in this case simply presumes such a modification or departure (where none is expressed) based on a perceived legislative intent "to make it onerous to waive one's community property rights" and "[enter] into a matrimonial agreement that is not favored by public policy." **Acurio**,

slip op. at 5-6. However, the majority's foundational premise–that the matrimonial agreement is not favored by public policy and therefore "procedural hurdles were put in place to ensure the parties consider the consequences of entering into a matrimonial agreement"–fails to account for the fact that the legislature has moved away from imposing the legal regime on all married persons and has provided, through La. C.C. art. 2328, that spouses are now free to establish the matrimonial regime of their choice.

In any event, after eschewing resort to the code articles on general obligations, the majority turns its attention to those very articles, in particular to La. C.C. art. 1835, to argue that given the "sancti[ty]" accorded authentic acts, "it makes little sense to present as an option a heightened burden for execution of an agreement when a much less stringent one would suffice." **Acurio**, slip op. at 7. However, this is precisely what the language of La. C.C. art. 2331 contemplates when it uses the disjunctive "or." Louisiana C.C. art. 2331 provides that the matrimonial agreement "shall be made by authentic act *or* by an act under private signature duly acknowledged by the spouses." (Emphasis added.) As the commentators have noted, the fact that the agreement can be executed as either an authentic act or an act under private signature duly acknowledged underscores the purpose of the requirement as one of proof rather than form:

> The authentic act requirement for matrimonial agreements does not serve the typical cautionary function of the authentic act because the act may be a simple written agreement that is acknowledged at a later time. Thus, the policy behind this requirement, then, is simply an evidentiary one adding to the reliability of the writing as what was actually executed by the parties. Although normal authentication is adequate if done by one party to the agreement, Louisiana Civil Code Article 2331 requires that the act be acknowledged "by the spouses," presumably meaning both of them.

8

16 CARROLL & MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES, § 8:7 at p. 861-862 (footnotes omitted).

"[L]egislation is the superior source of law in Louisiana." La. C.C. art. 1, Rev. cmt. (a). When a law is clear and unambiguous and its application does not lead to absurd consequences, it must be applied as written and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9. In this case, the relevant law is that contained in La. C.C. art. 2331 and in La. C.C. art. 1836 (which is made applicable by La. C.C. arts. 1915 and 2328, Rev. cmt. (b)). Contrary to the majority's suggestion, there is nothing ambiguous about the phrase "by authentic act or by an act under private signature duly acknowledged by the spouses," as it appears in La. C.C. art. 2331 and, thus, there is no need to go in search of a legislative intent that is otherwise clearly conveyed by the words of the relevant Code articles.

In the final analysis, under the guise of protecting the legal regime, the majority overlooks changes to our matrimonial regimes law which provide for freedom to contract for a regime of the spouses' choice, and the clear and unambiguous language of La. C.C. arts. 2331 and 1836. Furthermore, it does so in a case in which there is no indication that the spouses did not enter into the matrimonial agreement with their eyes wide open, having married previously and divorced. Indeed, it was Mrs. Acurio who drafted the prenuptial agreement, which was signed by both parties four days prior to their marriage. Both parties have acknowledged their signatures on the matrimonial agreement and, during their marriage, they conducted their financial lives consistent therewith (with the exception of a single business enterprise). In fact, when Dr. Acurio bought the home in which they lived with his separate funds, Mrs. Acurio appeared and signed the deed and affirmed that the house was Dr. Acurio's separate property. She stated under oath in her deposition that she signed the

agreement. Under these circumstances, it is clear that Mrs. Acurio judicially acknowledged her signature and the agreement. Because there is no requirement that the acknowledgment of the spouses' signatures be executed prior to the marriage, it follows that the prenuptial agreement is an act under private signature duly acknowledged and is, therefore, valid and enforceable.

I respectfully dissent from the majority's conclusion to the contrary.

05/03/2017

SUPREME COURT OF LOUISIANA

No. 2016-C-1395

DANIELLE DEON DICKERSON ACURIO

VERSUS

DR. MICHAEL THOMAS ACURIO

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF BOSSIER

**Hughes, J., dissenting.**

I respectfully dissent. The contract in this case was entered into before the marriage. There is no question of forgery or fraud. The plaintiff acknowledges her signature under oath. The contract was honored for many years. To now hold that the contract under private signature, which has never been questioned over the years, is somehow invalid due to a timing requirement not found in the law will cause problems in the public record for any transactions involving the separate property of the parties that may have occurred in the interim.

The contract was complete between the parties when signed. The acknowledgment is a form of proof and does not affect the substance of the contract. The law does not supply a time requirement for when an act under private signature, duly acknowledged, may be acknowledged. The important issue is *whether* it is acknowledged, not when. In this case the act was acknowledged, in accord with the actual practice of the parties over the years.